Donald MOREAU, Plaintiff, Appellant,

v.

JAMES RIVER–OTIS, INC., et al.,
Defendants, Appellees.

No. 85–1140.

United States Court of Appeals,
First Circuit.

Argued June 5, 1985.
Decided July 10, 1985.

G. Curtis Webber, Auburn, Maine, with whom Linnell, Choate & Webber, Auburn, Maine, was on brief, for appellant.

George S. Isaacson, Lewiston, Maine, with whom Martha E. Greene and Brann & Isaacson, Lewiston, Maine, were on brief, for appellee James River-Otis, Inc.

James W. Case and McTeague, Higbee, Libner, Reitman, MacAdam & Case, Brunswick, Maine, on brief, for appellees Local Union No. 247, Intern. Broth. of Firemen and Oilers, AFL–CIO, and Intern. Broth. of Firemen and Oilers, AFL–CIO.

Before COFFIN, RUBIN * and BOWNES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

An employee contends that his employer denied him a transfer to another department in violation of his union's collective bargaining agreement with the employer and that the union failed to represent him fairly in handling his grievance. The employee appeals from a summary judgment predicated on the validity of an amendment to the collective bargaining agreement that the district court found local union officers to have apparent authority to execute. Be-

* Of the Fifth Circuit, sitting by designation.

cause there are genuine issues of material fact concerning the apparent authority of the local union officers to act on behalf of the international union, we reverse the summary judgment.

## I.

In February, 1978, James River-Otis Inc. (the Company) entered into a collective bargaining agreement with the United Paperworkers International Union (Paperworkers) and the International Brotherhood of Firemen & Oilers (Firemen) covering employees at the Company's Jay, Maine, mill. On the date of the contract, Company employees were represented by two Paperworkers' locals and one Firemens' local.

Later that year, the Company circulated to these three union locals various proposed side agreements and mill rules. So far as presently appears, these were not sent to either international union. The proposed side agreements included a prohibition against transfer of a steam plant employee to other positions in the mill until he had completed three years of service in the steam plant. The Company intended this provision to accomplish two purposes: the Company would be assured that steam plant employees would remain in their jobs long enough to become qualified and licensed to operate boilers, and it would be unnecessary, when vacancies occurred, to hire qualified new employees to operate the steam plant, rather than, as the union preferred, to transfer employees to the steam plant from within the Company. This proposal created an exception to a general provision in the master collective bargaining agreement requiring award of a vacant job in any department to the senior qualified employee.[1]

The Company presented its proposal to the presidents of the three union locals, who in turn approached their memberships for approval. Following discussions between the union locals and the Company, James River plant engineer Karl Saila sent a memorandum of agreement to the presidents of the three locals. Although this memo was not signed by any union officer, the affidavits presented by the defendants assert that the presidents of all three locals considered the Company's proposal to have been approved by the locals, and to have become a binding agreement.

In May, 1979, Moreau sought to fill a vacant job in the steam plant and the Company granted his request. At the time he transferred into the plant, the Company specifically informed Moreau of the three-year restriction on "bidding out," and he understood that the restriction applied to him. In October, 1981, however, Moreau applied for a job in the maintenance department as a millwright helper. The Company refused to transfer him to that position on the basis of the three-year "bidding-out" restriction. Moreau then filed a grievance with the help of the Firemen's Local 247 president. The Company denied the grievance, and Local 247 declined to pursue arbitration.

Moreau next filed an unfair labor practice charge against the union for refusing to process his grievance in a conscientious manner. The Regional Director of the National Labor Relations Board refused to issue a complaint on the charge against the union, and the Board's general counsel denied an administrative appeal from the Regional Director's decision. This suit followed. The district court rendered summary judgment dismissing the suit on the basis that the three union locals' presidents had apparent authority to amend the collective bargaining agreement based on the fact that the presidents of the locals had expressly informed the Company that their unions approved of the side agreement, and

---

1. Section 5 of the Labor Agreement between James River-Otis, Inc. and the United Paperworkers International Union and the International Brotherhood of Firemen & Oilers provides, in pertinent part:

    If employees are to be promoted or laid off, the Management will take into consideration ability and length of service and when all the factors that constitute ability are relatively equal, then length of service will prevail.

    \* \* \* \* \* \*

    The Company and the Union agree to the principle of filling vacancies on the basis of seniority and ability....

the Company did not know, and had no reason to know, of any deficiencies in the ratification process. The district court also found that the master collective bargaining agreement does not distinguish between the locals and the international unions, and does not give notice to the Company that side agreements require the express approval of the international organization. Finally, the court focused on the statements of the locals' presidents that they dealt with the Company in a manner clearly indicating their authority to agree to the proposals on behalf of the union.

## II.

In reviewing the grant of a summary judgment, the court of appeals is bound by the same standard that controls the district court. Under this standard, summary judgment is appropriate only if the moving party adequately demonstrates that there is no genuine issue as to any material fact.[2] In making this determination, we must view the record in the light most favorable to the party opposing the motion, and must indulge in all inferences favorable to that party.[3]

Applying this standard to the record in this case, we find that the Company has failed to establish the absence of all genuine issues of material fact concerning the authority of the local union presidents to act on behalf of the international organizations. If the officers of the local unions did not have the authority to ratify the side agreement on behalf of the international union, then the three-year "bidding-out" restriction on steam plant employees might be invalid, and the Company may have violated the collective bargaining agreement by refusing to transfer Moreau on the basis of his seniority. Moreover, Moreau

may also be entitled to relief on his claim that the union breached its duty of fair representation. The issue of the union locals' authority to act on behalf of the international union, therefore, is crucial if the summary judgment for the defendants is to be upheld.

Section 301(b) of the Labor Management Relations Act provides that a union "shall be bound by the acts of its agents."[4] Section 301(e), in turn, provides:

[f]or the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.[5]

This section has been construed as opening the way for the application of general common law rules of agency.[6] This district court recognized this principle by holding that "[a]n agreement entered into by a union representative with apparent authority to bind the union is valid and binding even if actual authority, such as through membership ratification, is lacking."

The facts recited by the district court and the additional fact, urged at oral argument, that the union locals' presidents had signed the master collective bargaining agreement on behalf of the international unions, are relevant on the issue of the local presidents' apparent authority, but they do not, standing alone, conclusively establish that authority. Apparent authority cannot be established merely by showing that the agent claimed authority or purported to exercise it, but must be established by proof of something said or done by the principal on which a third person

---

2. *Maiorana v. MacDonald,* 596 F.2d 1072, 1076 (1st Cir.1979). *See* Fed.R.Civ.P. 56(c).

3. *Metropolitan Life Insurance Co. v. Ditmore,* 729 F.2d 1, 4 (1st Cir.1984); *Cloud v. Trustees of Boston University,* 720 F.2d 721, 725 (1st Cir. 1983).

4. 29 U.S.C. § 185(b).

5. *Id.* at § 185(e).

6. *See Carbon Fuel Co. v. United Mine Workers of America,* 444 U.S. 212, 216–17, 100 S.Ct. 410, 413–14, 62 L.Ed.2d 394 (1979). *Accord Sine v. Local No. 992, International Brotherhood of Teamsters,* 730 F.2d 964, 966 (4th Cir.1984); *Consolidation Coal Co. v. United Mine Workers of America, Local 1261,* 725 F.2d 1258, 1262 n. 10 (10th Cir.1984).

reasonably relied.[7] The burden of proving apparent authority rests on the party asserting that the act was authorized.[8]

■ The Restatement (Second) Agency defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."[9] Such authority "is created as to a third person by written or spoken words or any other conduct *of the principal* which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."[10] Apparent authority can, therefore, be created only by the principal's manifestations to a third party. "Until there has been a communication [from the principal] to a particular person, and until that person infers that the agent is authorized, there is no apparent authority...."[11] The agent's representations of authority to a third person, standing alone, are insufficient to create apparent authority in the agent to act for the principal.

■ Other than the representations of authority made by the local officers themselves, however, there is little in the record to support the district court's finding that the local presidents had the apparent authority to bind the union. In particular, there is virtually no evidence in the record at this time to indicate that the international organization made any representations to the Company or to any other third party that local union officers had authority to negotiate binding amendments to a collective bargaining agreement between an employer and the international union.

At oral argument, counsel for the defendants made much of the fact that master collective bargaining agreement was signed by both the international unions and by representatives of the union locals, contending that this indicated the international unions' consent to have the locals enter into binding side agreements on behalf of the internationals. This evidence provides an indicium of the local officers' apparent authority to act for the international organization, but by itself, it is not enough to establish that the international represented to the Company that it consented to be bound by the acts of the local officers or to permit them later to amend the collective bargaining agreement. The Paperworkers' constitution recites that a local union cannot bind the international without that organization's express written consent.[12] Such conflicting evidence is sufficient to create a genuine issue of material fact sufficient to preclude a summary judgment.

■ Section 301 exacts flexibility in the application of agency principles to collective bargaining relationships. Management should neither be allowed nor required to scrutinize internal union policies and practices too closely, and, indeed, it may commit an unfair labor practice if it delves too deeply into the union's affairs. In the present case, however, genuine issues of material fact are present with re-

---

7. *Richard A. Cheramie Enterprises v. Mt. Airy Refining Co.*, 708 F.2d 156, 159 (5th Cir.1983); *Karavos Compania Naviera S.A. v. Atlantica Export Co.*, 588 F.2d 1, 10 (2d Cir.1978). *See* Restatement (Second) Agency § 8 comments b, e (1958).

8. *See Stone v. First Wyoming Bank*, 625 F.2d 332, 342–43 (10th Cir.1980); *Frank Sullivan Co. v. Midwest Sheet Metal Works*, 335 F.2d 33, 40 (8th Cir.1964).

9. Restatement (Second) Agency § 8 (1958).

10. *Id.* § 27 (emphasis added).

11. *Id.* comment b.

12. Article IX, Section 5 of the United Paperworkers International Union Constitution provides:

> No local union, its officers, agents or representatives, nor the Officers, Agents or Representatives of the International Union shall have the power or authority to make any contract or incur any liability binding on the International Union without the written consent of the International President and the approval of the International Executive Board.

gard to the authority of the union locals to act on behalf of the international union. We cannot affirm the district court's decision to grant summary judgment to the defendants on the basis of the evidence in the record. Our remand for further consideration of this issue does not preclude the possibility that further factual development may permit summary judgment or, if it does not, that a separate trial solely on the issue of authority, real or apparent, may be desirable.

For these reasons the summary judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.