**Donald MOREAU, Plaintiff,**

v.

**JAMES RIVER–OTIS, INC., Local Union No. 247, International Brotherhood of Firemen & Oilers, AFL–CIO and International Brotherhood of Firemen & Oilers, AFL–CIO, Defendants.**

Civ. No. 82–0198–B.

United States District Court,
D. Maine.

Jan. 7, 1987.

Curtis Webber, Auburn, Me., for plaintiff.

Jonathan Beal and James W. Case, Brunswick, Me., for Unions.

George Isaacson, Lewiston, Me., for James River-Otis, Inc.

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

CYR, Chief Judge.

On August 31, 1982, plaintiff brought this action in state court against his employer, defendant James River-Otis, Inc.

[Company], for breach of contract, and against his union, defendant Local No. 247, International Brotherhood of Firemen & Oilers, AFL–CIO [Local 247], for breach of its duty of fair representation. The action was removed to this court on October 7, 1982. On November 22, 1983, plaintiff amended his complaint to assert a similar unfair representation claim against the international union, International Brotherhood of Firemen & Oilers, AFL–CIO [I.B.F.O.]. Jurisdiction is invoked under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).

On September 22, 1983, defendant Company moved for summary judgment. The record at that time reflected the following undisputed facts.

On February 1, 1978, the Company entered into a collective bargaining agreement with the I.B.F.O. and the United Paperworkers International Union [U.P.I.U.], covering employees at the Otis mill in Jay, Maine.[1] As of February 1, 1978, there were two U.P.I.U. locals [Local 8 and Local 11] and one I.B.F.O. local [Local 247], representing Company employees.

During the spring of 1978 the Company proposed that various side agreements be adopted by it and the three union locals. One of the proposed side agreements would prohibit steam plant employees from transferring to another position until they had completed at least three years of service in the steam plant.[2] The proposed side agreement constituted an exception to the general provision in the collective bargaining agreement which required that the senior qualified employee be assigned to fill a vacant job. (See Labor Agreement, section 5E, Deposition of Dennis Merrill, Exhibit 1.)

---

1. The previous owner of the Otis mill, International Paper Company, transferred the mill to James River Corporation on or about January 1978. The collective bargaining agreement, and all side agreements and mill rules, between International Paper Company and the I.B.F.O. and the U.P.I.U. terminated upon the transfer of the mill. As a consequence, a new collective bargaining agreement was negotiated during December 1977.

2. The proposed agreement had a twofold purpose: (1) it would assure the Company that these employees would remain long enough to become qualified and licensed as boiler operators, and (2) it would avoid the necessity of hiring qualified personnel for the steam plant from the "outside," rather than, as the unions preferred, transferring existing Company employees to the steam plant.

In May 1978, the Company presented the proposed side agreement to the representatives of the three union locals, who in turn went to their memberships for approval. The presidents of Locals 8 and 11 subsequently informed the Company that their respective memberships had approved the proposed side agreement. Upon receipt of the proposed side agreement, the president and the steward of Local 247 advised the Company that it could consider the proposed side agreement approved unless it heard to the contrary. There is nothing in the record indicating that an officer of Local 247 ever notified the Company that the membership of Local 247 had formally approved the side agreement. No officer of Local 247 ever notified the Company that Local 247 ever disapproved the side agreement or ever contradicted the earlier advice given to the Company by the president and steward of Local 247.[3]

On June 8, 1978, a Company representative sent a memorandum of agreement concerning the proposed side agreement to the presidents of the three union locals. The presidents of all three locals considered the Company proposal to have been approved by the locals, and thus to be a binding agreement at all times subsequent to June 1978.

In May 1979, plaintiff applied for a vacant position in the steam plant. He was informed of the three-year restriction on transferring out of the steam plant, and he understood that he would be bound by this restriction. Subsequently, in October 1981, while working in the steam plant, plaintiff applied for a job in another area of the Company. He was refused the job on the basis of the three-year restriction contained in the side agreement. On November 4, 1981, plaintiff submitted a grievance to the Company, which was denied. After exhausting his administrative remedies,[4] plaintiff filed suit on August 31, 1982.

On the basis of these facts, the court granted the Company's motion for summary judgment on January 30, 1985. The court found that the February 1, 1978 collective bargaining agreement was subject to modification as proposed by the Company in the side agreement; that the Statute of Frauds did not apply to this labor contract (and, in any event, that the side agreement had been memorialized); and that the agreement had been properly ratified by the unions.

On the issue of ratification, the court found, first, that despite alleged irregularities in the approval process by one of the union locals, the presidents of the locals had apparent authority to approve the side agreement; second, that the locals had apparent authority to act on behalf of the international unions in entering into the side agreement; and, third, that the officers of the locals in fact approved the side agreement.

Plaintiff appealed. On appeal, the First Circuit reversed and remanded. *Moreau v. James River-Otis, Inc.*, 767 F.2d 6 (1st Cir.1985). The First Circuit examined only

---

**3.** Plaintiff alleges that there were irregularities in the Local 247 approval process. It appears that a formal vote of the membership was never taken. However, the members of the local were polled informally both by the president and by the shop steward, and none of those polled indicated any objection to the proposal. Plaintiff points to nothing in the record which would suggest that the Company knew or had reason to know of any deficiency in the ratification process.

**4.** The Regional Director of the National Labor Relations Board, in refusing to issue a complaint on the charge against the union, stated on May 26, 1982:

The investigation revealed that the Union's decision not to process Mr. Moreau's grievance was based on its good-faith and reasonable conclusion that, pursuant to a duly negotiated side agreement between the Union and the Employer, employees who, like Mr. Moreau, have worked in the steam plant for less than three years are not eligible to bid on jobs outside the steam plant. The investigation revealed no evidence that would tend to establish that the Union acted on Mr. Moreau's grievance on the basis of arbitrary, invidious, or irrelevant considerations, or in a perfunctory manner.

Defendant's Exhibit A.

On June 30, 1982, N.L.R.B. general counsel denied the administrative appeal from the Regional Director's decision. (Defendant's Exhibit B.)

the issue of the union locals' apparent authority to act on behalf of the international unions, stating that the burden of proving apparent authority rested with the defendant Company; that "[a]pparent authority can ... be created only by the principal's manifestation to a third party"; and that there was "virtually no evidence in the record at this time to indicate that the international organization made any representations to the Company or to any other third party that local union officers had authority to negotiate binding amendments." *Id.* at 10.

The Court of Appeals held that there were genuine issues of material fact. In remanding the case for further consideration of this issue, the Court of Appeals stated that its remand "does not preclude the possibility that further factual development may permit summary judgment or, if it does not, that a separate trial solely on the issue of authority, real or apparent, may be desirable." *Id.* at 11.

On October 31, 1985, defendant again moved for summary judgment, asserting that the local union officials possessed both actual and apparent authority to act on behalf of the international organizations in entering into the side agreement with the Company. To support its claim, defendant submitted four affidavits.

On June 25, 1986, the United States Magistrate issued his Report and Recommended Decision. The Magistrate noted that the plaintiff "has elected to reargue the question whether the side agreement was ever properly ratified by the members of the Local," and that, on the issue of the locals' real or apparent authority to act on behalf of the international unions, "the Company appears to have the better of the argument." (Magistrate's Report at 3.)[5]

Nevertheless, on the basis of "ambiguities and uncertain nuances of wording" in the affidavits and depositions,[6] he recommended that the motion for summary judgment be denied and that a separate trial be conducted "solely on the issue of authority, real or apparent." *Id.* at 3, 5.

The court now undertakes *de novo* review of those portions of the Recommended Decision to which timely objection has been made. 28 U.S.C. § 636(b).

## I.

On the issue of the authority of the union locals to enter into side agreements with the Company, Jackson Henry, the international representative of the I.B.F.O. responsible for the Otis mill in December 1977, states that "local unions of the IBF & O have always had full authority to negotiate side agreements with respect to local mill working conditions." (Henry Affidavit ¶ 4.) Although he was not present at or involved in the 1977 negotiations or the subsequent side agreements, he states that "as far as the International Union is concerned, the side agreements entered into by the Local No. 247 President are valid and enforceable and were negotiated within the authority of the local union President." *Id.*

Henry also states that

[d]uring the negotiation session, George Lambertson was the chief spokesman for the union side, with my concurrence and agreement. Joint negotiations were held, since the contract with International Paper Company was between the company and a single unit represented by both UPIU and IBF & O.

*Id.* at ¶ 3.

This is confirmed by George Lambertson, who was the international representative of

5. The issue, of course, it not whether "the Company appears to have the better of the argument." As the Supreme Court, in *Anderson v. Liberty Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), stated: "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter."

6. A motion for summary judgment is to be determined initially on the basis of whether the moving party has met its burden of showing that there is no genuine issue of material fact. The existence of "ambiguities and uncertain nuances of wording" may or may not be determinative in this regard. The Magistrate lists these "ambiguities" on pages 4 and 5 of his Report. *See infra* note 8.

the U.P.I.U. at the time of the negotiations. Lambertson states that he "acted as chair and spokesman for the International Brotherhood of Firemen and Oilers and the UPIU during the negotiations." (Lambertson Affidavit ¶ 4.)

In his capacity as spokesman for both international unions, Lambertson agreed that the union locals had the authority to enter into side agreements. He states that during the negotiations he "agreed that prior side agreements would be voided and that new side agreements could be entered between the company and locals as needed." *Id.*

James Eubanks, who represented the Company in the negotiations with the unions,[7] corroborates Lambertson's averment. He states:

> George Lambertson, the International Representative of the U.P.I.U., agreed with me during the negotiation of the Master Agreement that matters of local concern, traditionally dealt with in side agreements, would not be included in the February 1, 1978 Master Agreement but would instead be addressed by supplementary side agreements, as had been the previous practice with International Paper Company.

Eubanks Affidavit ¶ 14.

 These affidavits clearly set forth George Lambertson's authority to speak for both international unions in their negotiations with the Company. They also demonstrate that Lambertson agreed with the Company that the union locals had the authority to enter into side agreements with the Company. Thus the requisite elements of apparent authority are established. *Restatement (Second) of Agency* §§ 8 & 27

(1958). The principal (the international unions, represented by George Lambertson) made representations to a third party (the Company, represented by James Eubanks), which, "reasonably interpreted, cause[d] the third person to believe that the principal consented to have the act done on his behalf by the person purporting to act for him." *Id.* § 27.

## II.

Relying on deposition testimony, plaintiff contends that the representations made by Lambertson to the Company referred only to a review of side agreements that had been in effect previously, under the contract with International Paper Company, and not to any new side agreements. (*See* Plaintiff's Memorandum Opposing Defendants' Motions for Summary Judgment, at 10–12 [hereinafter Plaintiff's Memorandum]. Lambertson's affidavit, however, states that *"new* side agreements could be entered between the company and the locals as needed." (Lambertson Affidavit ¶ 4) (emphasis added).

In the alternative, plaintiff argues that even if the union locals had the authority to enter into new side agreements, the *type* of side agreement which they could enter into is "different both in degree and in kind" from the one which is the subject of the present litigation.[8] (Plaintiff's Memorandum, *supra,* at 12.) Plaintiff claims in this regard that the union locals could resolve ambiguous wording or "fill in gaps" in the collective bargaining agreement, but could not enter into side agreements which would "vary the terms of the contract."[9] *Id.* at 13.

 The issue, then, is whether the representation made by Lambertson to the

---

7. Eubanks was also a representative of International Paper Company during prior negotiations with the international unions.

8. While most of the "ambiguities" noted by the Magistrate do not address the issue of the locals' apparent authority, two of them raise questions similar to the plaintiff's present argument: "what are 'local' issues for a single mill in the overall collective bargaining agreement?" and, referring to the representation made by Lambertson to Eubanks, "what topics for side agree-

ments were reasonably included in his statement?" (Magistrate's Report at 4 n. 2(1) & (3).)

9. The side agreement in question varies the terms of the contract to the degree that it provides an exception to the application of seniority rules with respect to workers seeking transfer from the steam plant. The book of side agreements and mill rules, however, contains a number of provisions that do more than resolve ambiguities or fill in gaps. Some of these relate to an employee's seniority. For instance, an employee transferring to a utility job in the

Company, "reasonably interpreted," caused the Company to believe that the local unions had the authority to enter into the subject side agreement.

Lambertson's representation was that "new side agreements could be entered between the company and locals *as needed.*" (Lambertson Affidavit ¶ 4) (emphasis added). There is nothing in the record to indicate that this representation was limited in the manner suggested by plaintiff, or that the Company was on notice that such a limitation should apply.

In addition, the Company representative, Eubanks, had been involved in prior negotiations with the same international unions, on behalf of International Paper Company. At that time, side agreements had been entered into between the Company and the same union locals. Consequently, it was reasonable for Eubanks to interpret Lambertson's representation as including similar kinds of side agreements, particularly since Lambertson had agreed with Eubanks that new side agreements could be entered to replace the prior side agreements which would be voided. *Id.*

Finally, the record indicates that all the principal parties—the Company representatives, the international representatives, and the officers of the union locals—interpreted the authority of the locals in the same way. Lambertson states:

> During the time that I have serviced the Otis mill, first as owned by International Paper, then as owned by James River-Otis, Inc., the International unions of both the IBFO and the UPIU have routinely negotiated the collective bargaining agreements. The local unions of both the UPIU and the IBFO have always negotiated side agreements without the participation of either International union.

Lambertson Affidavit ¶ 6.

With respect to the side agreements which the union locals entered into in 1978, he states:

> I did not participate in negotiation of side agreements in 1978, but learned of them afterwards. As far as the International union is concerned, the locals of the UPIU had full authority to negotiate these side agreements.

*Id.* at ¶ 5.

Of course, these statements were made subsequent to the subject side agreement. As a result, they ratify the side agreement, rather than authorize it. Nevertheless, the defendant has produced uncontroverted, competent and probative evidence sufficient to support summary judgment for the defendant that the union locals possessed apparent authority to enter into the side agreement.

If the moving party provides credible evidence which would support a directed verdict if not controverted at trial, and the party opposing the motion does not offer counter-affidavits or other evidence setting forth "specific facts showing that there is a genuine issue for trial," then "summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Doctors Hospital, Inc. v. Recio,* 383 F.Supp. 409 (D.P.R.1974). *See also* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2727 (1983).

In the present case, plaintiff has not offered counter-affidavits or other evidentiary material to controvert defendant's affidavits. Nor has he provided competent evidence which would support a judgment in his favor at trial. Consequently, plaintiff has not met his burden of setting forth specific facts which show the existence of a genuine issue for trial.

The First Circuit has held that the language of Rule 56(c) requires that the party opposing summary judgment must establish the existence of a material issue by

Finishing Room, Beater Room, Coating Prep, or the Lab loses his former departmental seniority if he stays in the new position for 90 days or 4

months, whichever comes first (*See* James River-Otis, Inc. Side Agreements & Mill Rules, Deposition of Dennis Merrill, Exhibit 2.)

substantial evidence, evidence sufficient " 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *quoting First National Bank of Arizona v. Cities Service Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). *See also Cleary v. Perfectune, Inc.,* 700 F.2d 774, 778 (1st Cir.1983). Plaintiff has produced no such substantial evidence.

Plaintiff acknowledges that the international representative, Lambertson, told the Company that the union locals had the authority to enter into side agreements. He also acknowledges that both the Company and the union representatives characterize the subject side agreement as one reasonably contemplated by Lambertson's representation. In other words, instead of offering material evidence plaintiff merely attacks the credibility of defendant's affiants.

It is now apparent that the company's case involves a number of complex and disputed factual contentions which it has attempted to present on paper rather than in open court. By this device, the company has sought to shield its witnesses from the scrutiny which cross examination would provide. The reliability of the company's affidavits is particularly suspect in light of the fact that the affiants were all union officials or employees of the company and thus, by definition, interested in the outcome of the litigation. Moreover, given the affiants' hostility to plaintiff's cause, it was essential that their credibility be assessed by a jury and not screened by written affidavits.

Plaintiff's Reply to Company's Objections to Magistrate's Recommended Decision, at 2 (footnotes omitted).

Such an attack is unavailing against a properly supported motion for summary judgment. As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc., supra,* 106 S.Ct. at 2514:

We do not understand ... that a plaintiff may defeat a defendant's properly sup-

ported motion for summary judgment in a conspiracy or libel case, for example, without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of a conspiracy or of legal malice. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

There is nothing in the record to indicate that defendant's affiants are not credible. Thus, plaintiff's mere assertion that the credibility of all the principal parties is "suspect" and must be assessed by a jury is insufficient to meet his burden.

### CONCLUSION

The record establishes that there is no genuine issue of material fact as to the apparent authority of the union locals to act on behalf of the international unions in entering into the side agreement which is the subject of the present litigation. The party moving for summary judgment, the defendant Company, has provided competent affidavits which state that the international unions, through their representative, George Lambertson, agreed that the locals had the authority to enter into side agreements. This representation, reasonably interpreted, justified the Company's belief that the locals had the requisite authority to enter into the subject side agreement.

Plaintiff has not met his own burden of producing evidence which would support a jury verdict. Instead, his argument rests essentially on a general attack upon the credibility of defendant's affiants, which is insufficient to defeat the defendant's prop-

erly supported motion for summary judgment.

Accordingly, the court finds that the union locals had the apparent authority to enter into the subject side agreement; that there was a binding side agreement between the Company and the unions which precluded plaintiff from transferring out of the Otis mill steam plant in October 1981, less than three years after he had begun working in the plant; and that the Company's refusal to transfer him did not constitute a breach of contract.

Accordingly, defendant's motion for summary judgment is hereby GRANTED.

## DIRECTION FOR ENTRY OF JUDGMENT

There being no just reason for delay in entering a final judgment as to the claims against the Company,[10] the court hereby directs, pursuant to Fed.R.Civ.P. 54(b), that final judgment be entered dismissing all claims against defendant James River-Otis, Inc.

---

**10.** It would appear, subject to the right of plaintiff and the defendant unions to persuade the court to the contrary, that the present ruling would represent a bar to the plaintiff's claims against these defendant unions. *See DeMichele v. International Union of Electrical Radio and Machine Workers (AFL–CIO),* 576 F.Supp. 931, 934–35 (D.R.I.1983).