Donald MOREAU, Plaintiff, Appellant,

v.

LOCAL UNION NO. 247, INTERNATIONAL BROTHERHOOD OF FIREMEN AND OILERS, AFL–CIO, et al., Defendants, Appellees.

No. 87–2098.

United States Court of Appeals, First Circuit.

Heard May 3, 1988.

Decided July 13, 1988.

Curtis Webber with whom Linnell, Choate & Webber, Auburn, Me., was on brief, for plaintiff, appellant.

George S. Isaacson with whom Martha E. Greene and Brann & Isaacson, Lewiston, Me., were on brief, for defendant, appellee James River–Otis, Inc.

Randall E. Nash with whom McTeague, Higbee, Libner, Reitman, MacAdam & Case, Topsham, Me., were on brief, for defendants, appellees Local Union No. 247, Intern. Broth. of Firemen and Oilers, AFL–CIO, and Intern. Broth. of Firemen and Oilers, AFL–CIO.

Before COFFIN and BOWNES, Circuit Judges, and FUSTE,* District Judge.

FUSTE, District Judge.

Moreau commenced this litigation in 1982 against his employer, James River–Otis, Inc. (Company), for breach of contract, and against his local union, Local 247, and its international union, the International Brotherhood of Firemen & Oilers, AFL–CIO (IBFO) for breach of its duty of fair representation. The district court granted summary judgment in favor of the defendants, and dismissed the suit. On appeal, this court reversed and remanded, finding insufficient evidence to support the judgment. *Moreau v. James River–Otis,* 767 F.2d 6 (1st Cir.1985). On remand and with additional evidence, the district court granted the Company's second summary judgment motion, and again dismissed the case. *Moreau v. James River–Otis,* 652 F.Supp.

* Of the District of Puerto Rico, sitting by designa-

1030 (D.Me.1987). We review the second dismissal, and this time affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

The procedural and factual history of this case is well developed in the opinion below, and we succinctly restate it here. In February of 1978, the Company entered into a collective bargaining agreement with two international unions, the IBFO and the United Paperworkers International Union (UPIU), (not a party here), covering employees in the Otis mill in Jay, Maine. At that time there were two UPIU local unions, Locals 8 and 11, and one of the IBFO, Local 247. In the spring of 1978, the Company proposed various side agreements to the collective bargaining agreement, including one restricting employee transfers from the steam plant before completion of three years of service there. This side agreement was an exception to the provision in the collective bargaining agreement requiring that job vacancies be filled by the senior qualified employee.

In May of 1978, the Company proposed this particular side agreement to the leadership of the three local unions, who sought approval from their memberships. The proposal was not sent to or brought before the international unions. The presidents of the two UPIU local unions informed the Company that their memberships approved. The president and steward of Local 247 advised the Company that it should consider the side agreement approved unless it heard to the contrary. No officer of Local 247 ever informed the Company either that formal approval was given or that the local disapproved of the side agreement. The union's leadership did not take a formal vote of its members, but, instead, informally polled them and found no opposition. In June of 1978, a Company representative sent a memorandum of agreement to the presidents of all three local unions in reference to the side agreement. Although the presidents did not sign the agreement, they and the Company considered the side agreement approved

tion.

and binding at all times subsequent to June 1978.[1]

In May of 1979, the Company granted Moreau's request to fill a vacancy in the steam plant. He knew at the time that he requested the job transfer of the three-year transfer provision. Shortly after he began work there, he questioned the president of Local 247 regarding the validity of this provision. However, Moreau did not challenge it until 1981, when he sought to transfer out of the steam plant and into the maintenance department. The Company refused his transfer request, based on the three-year restriction, and Moreau submitted a grievance to the Company. Because they considered the side agreement binding, the Company denied the grievance, and Local 247 refused to pursue arbitration. After exhausting administrative remedies, Moreau filed this suit in 1982. In essence, he claims that the Company breached the collective bargaining agreement by denying him the job transfer, and that the union breached its duty of fair representation in refusing to pursue arbitration on his behalf.

Based on the above facts, in 1985 the district court granted the Company's motion for summary judgment. The court held, among other things, that the collective bargaining agreement was subject to modification by the side agreement, and that the agreement had been properly ratified because first, the presidents of the locals had apparent authority to enter into the side agreement on behalf of the international unions, and in addition, they approved the side agreement. On appeal, this court reversed and remanded. *Moreau v. James River–Otis*, 767 F.2d 6 (1st Cir.1985). Upon an examination of the record, the court found "virtually no evidence" that the "local presidents had the apparent authority to bind the union." 767 F.2d at 10. The court intimated that further factual development might facilitate summary judgment or a separate trial on the issue of authority. *Id.* In its opinion, the court set forth the generally accepted definition of apparent authority: "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (2nd) Agency, sec. 8 (1958); *Moreau,* 767 F.2d at 10. It "is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (2nd) Agency, sec. 27. In other words, apparent authority rests on the principal's representations to a third person concerning the agent's authority to act for him, and the third person's reasonable reliance on those representations.

On remand, the Company submitted its second motion for summary judgment, supported by four additional, uncontroverted affidavits. The affidavits were those of Jackson Henry, the international representative of the IBFO, George Lambertson, the international representative for the UPIU, and James Eubanks, the Company representative.[2] The district court granted the motion, rejecting a magistrate's recommendation that it be denied. Based on the affidavits, it again held that the local unions had apparent authority to enter into the side agreement with the Company. *Moreau v. James River–Otis*, 652 F.Supp. 1030 (D.Me.1987).

---

**1.** At least the leadership of the international UPIU considered the side agreement ratified and binding. George Lambertson, its international representative, attested in his affidavit supporting the second motion for summary judgment:

> I did not participate in negotiation of side agreements in 1978, but learned of them afterwards. As far as the International union is

concerned, the locals of the UPIU had full authority to negotiate these side agreements. *See* Restatement (2nd) of Agency, sec. 82 (defining ratification). *See also Moreau v. James River–Otis*, 652 F.Supp. at 1035. Apparently, there was no evidence of the International IBFO's ratification of the side agreement.

**2.** The court made no mention of the fourth affidavit.

## STANDARD OF REVIEW

In reviewing the district court's grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Daury v. Smith,* 842 F.2d 9, 11 (1st Cir.1988). The opposing party may not merely rest on the pleadings and arguments, but must set forth specific facts showing a genuine issue about a material fact. *Williams v. Sea-Land,* 844 F.2d 17, 19 (1st Cir.1988). With these principles in mind, we begin our review.

## BREACH OF CONTRACT

■ In passing upon this matter, we must briefly outline the 1977 negotiations that resulted in the collective bargaining agreement. Present at the negotiations were James Eubanks and George Lambertson, but Jackson Henry did not participate. Lambertson, with the "concurrence and agreement"[3] of Jackson Henry, acted as spokesman for both international unions. Lambertson confirmed that he "acted as chair and spokesman"[4] for both unions. He attested that the local unions had the authority to enter into side agreements; in the negotiations Lambertson agreed with Eubanks that "prior side agreements would be voided and that new side agreements could be entered between the company and the locals as needed." He further attested that "[t]he local unions of both the UPIU and the IBFO have always negotiated side agreements without the participation of either International union."

While these affidavits showed Lambertson's authority to negotiate for both international unions, the James Eubanks affidavit conclusively established the apparent authority of the local unions to vary the 1978 collective bargaining agreement with side agreements:

3. Affidavit of Jackson Henry.

4. Affidavit of George Lambertson.

5. Affidavit of James Eubanks. The International Paper Company ("IPC") transferred the mill to the James River Company in 1978. Both the

George Lambertson, the International Representative of the UPIU, agreed with me during the negotiations of the Master Agreement that matters of local concern, traditionally dealt with in side agreements, would not be included in the February 1, 1978 Master Agreement but would instead be addressed by supplementary side agreements, as had been the previous practice with International Paper Company.[5]

We do not read these affidavits as authorizing a review of previously existing side agreements only, as Moreau suggests. Rather, the local unions could void old side agreements and negotiate new side agreements regarding matters of local concern on an as needed basis. As the district court correctly concluded, "the requisite elements of apparent authority [were] established." *Moreau,* 652 F.Supp. at 1034. The international unions, (principals), informed the Company (third person), that the local unions (agent), had authority to enter into side agreements with the Company regarding issues of local concern. This information, reasonably interpreted, caused the Company to believe that the international unions consented to the local unions entering into and approving this side agreement, which dealt with a local issue. *Id.; see also* Restatement (2nd) of Agency, secs. 8 and 27. Accordingly, the side agreement validly became a part of the collective bargaining agreement, and the Company committed no breach in denying Moreau the transfer.

■ As we noted above, plaintiff left these affidavits uncontroverted. Instead, with no factual support, he chose to attack the credibility of the affiants, and continues that strategy on appeal. However, a mere challenge to the credibility of a movant's witnesses without any supporting evidence does not create a genuine issue of material fact. *Anderson v. Liberty Lobby,*

IBFO and the UPIU represented IPC employees, but under a different collective bargaining agreement. Eubanks was also a representative of International Paper Company during the prior negotiations with these international unions.

*Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).[6]

■ Our holding that the district court correctly concluded that the local unions had the apparent authority to enter into binding side agreements on local matters is a sufficient basis to affirm its summary judgment. We therefore need not reach the issue of whether the local union's membership in fact ratified the side agreement. As the district court correctly recognized in its first summary judgment, "[a]n agreement entered into by a union representative with apparent authority to bind the union is valid and binding even if actual authority, such as through membership ratification, is lacking." *See Moreau v. James River–Otis*, 767 F.2d at 9 (quoting district court opinion).

## UNION'S BREACH OF FAIR REPRESENTATION

■ Moreau's claim against the union for breach of its duty of fair representation is based on the union's refusal to pursue arbitration. The union declined because of the restriction in the side agreement. Moreau's successful claim against the union is dependent at least upon a finding that the Company breached the collective bargaining agreement. *See DeMichele v. International Union of Electrical, Radio and Machine Workers*, 576 F.Supp. 931, 934–35 (D.R.I.1983). However, as we find above, the side agreement did become a part of the collective bargaining agreement between the Company and unions and the Company did not breach that contract. And because Moreau did not complete

three years of service in the steam plant, the side agreement effectively precluded him from transferring out. Therefore, the union, as a matter of law, could not breach its duty to Moreau in refusing to pursue arbitration on his behalf. *Id.*

*Affirmed.*

---

6. We now see no merit in the argument that because a provision of the UPIU International Constitution prohibits a local union from binding the International Union without written permission, Local 247 could not enter into this side agreement. *But see, Moreau,* 767 F.2d at 10, where the court suggests that this possible conflict may create a genuine issue of material fact. This provision reads as follows:

> No local union, its officers, agents or representatives, nor the Officers, Agents or Representatives of the International Union shall have the power or authority to make any contract or incur any liability binding on the International Union without the written con-

sent of the International President and the approval of the International Executive Board.

Article IX, Section 5, UPIU International Constitution. This provision only prohibits a local union from binding the International Union without prior permission. It does not prohibit a local union from entering into agreements that do not bind the International Union. The side agreement, which restricts employee transfers from the steam plant in the Otis mill in Jay, Maine, binds only those employees, and no others. It is a matter of purely local concern and, therefore, has no binding effect on the International Union.