**FIREMAN'S FUND INSURANCE COM-PANY, as Subrogee of Pierce Building Associates, Plaintiff,**

v.

**HARLEY REALTY COMPANY, 1330–54 Beacon Street 276–278A Harvard Street Suite 240, Brookline, MA and Control Building Services, Inc. 235 Fairhill Road Waltham, MA 02154 Defendants.**

**Civil Action No. 97–11715–REK.**

United States District Court,
D. Massachusetts.

Oct. 8, 1998.

James P. Cullen, Jr., Cozen & O'Connor, Philadelphia, PA, Patrick J. Loftus, III, Boston, MA, for Fireman's Fund Insurance Company.

Steven R. Kruczynski, Law Office of Pamela Storm, Sean J. Milano, Lee S. Mac-Phee, Morrison, Mahoney & Miller, Boston, MA, for Harley Realty Company, Control Building Services, Inc.

**Memorandum and Order**

KEETON, District Judge.

Pending for disposition are two Motions for Summary Judgment brought by Defendant Control Building Services, Inc. ("Control"). Submissions now before the court include:

(1) Control's Motion and Memorandum for Summary Judgment seeking to dismiss the cross-claim brought by co-defendant Harley Realty Company ("Harley") (Docket No. 18, filed August 19, 1998);

(2) Control's Motion and Memorandum for Summary Judgment seeking to dismiss the plaintiff's cause of action against Control (Docket No. 19, filed August 19, 1998);

(3) Control's Statement of Undisputed Facts (Attached to Docket Nos. 18 and 19);

(4) Plaintiff's Statement of Genuine Issues of Material Fact (Docket No. 20, filed September 1, 1998);

(5) Plaintiff's Memorandum of Law in Opposition to Control's Motion for Summary Judgment (Docket No. 21, filed September 1, 1998);

(6) Harley's Statement of Genuine Issues of Material Fact (Docket No. 22, filed September 30, 1998); and

(7) Harley's Memorandum of Law in Opposition to Control's Motion for Summary Judgment (Docket No. 23, filed September 30, 1998).

**I. Factual Background**

Pierce Building Associates ("Pierce") owns a multiple-tenant commercial property on Beacon Street in Brookline, Massachusetts, in which Harley leased office space. On January 11, 1996, Control provided trash removal services at the Pierce building, under a written agreement with Pierce.

On January 12, 1996, a portable space heater caused a fire in Harley's leased office space. The fire caused extensive damage to the Pierce building. According to Rita Broadbent, a secretary at Harley, Harley maintained the old space heater and Ms.

Broadbent occasionally used it to warm her work area. (Deposition of Rita Broadbent at 5, 20–22). Ms. Broadbent testified that the heater was broken and its control knob did not function. *Id.* at 22. In addition, the heater did not have an "on/off" switch; the heater began operating immediately upon being plugged into an electrical outlet. *Id.*

On January 11, 1996, the day before the fire, Ms. Broadbent and Burton Rudnick, a principal of Harley, were in the office. *Id.* at 7–8, 22. Ms. Broadbent testified that she left the office at approximately 3:00 p.m. and that the heater was not being used at that time. *Id.* at 7, 20. Mr. Rudnick closed the office and departed at approximately 4:45 p.m. (Harley's Response to Control's Second Set of Interrogatories). Harley maintains that the heater was unplugged at that time and, in fact, that no employee of Harley plugged in the heater at any time on January 11, 1996. *Id.*

Between the time Mr. Rudnick left and the time the fire started, Mario Rena, an employee of Control, entered Harley's office. (Deposition of Mario Rena at 16–17). Mr. Rena testified that he entered the office only long enough to empty the trash, less than five minutes, and he specifically denied turning on or plugging in the portable electric heater. *Id.* at 18.

Pierce had in effect at that time a policy of property insurance with plaintiff. Plaintiff initiated a subrogation action against the defendants based on a claim of negligence. Harley brought a cross-claim against Control seeking contribution under a negligence theory, seeking common law indemnity, and seeking damages for Harley's own losses in the fire, based on alleged negligence. Control has moved for summary judgment on all claims brought by plaintiff and all claims brought by Harley.

## II. Summary Judgment Standard

The First Circuit has endorsed a two-phase process to be used by the trial court when deciding motions for summary judgment. *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). In phase one, a preliminary showing must be made by the movant, that no genuine disputes of material fact exist that would require resolution at trial. *Id.* If

the movant satisfies this burden, then the nonmovant, in phase two, must "demonstrate, through specific facts, that a trialworthy issue remains." *Id.* If the nonmovant, in this case the plaintiff, fails to submit a showing of specific facts as required in this two phase process, the court orders judgment as a matter of law for the moving party.

Issues of fact are in "genuine" dispute if they "may reasonably be resolved in favor of either party." *Id.* Facts are "material" if they possess "the capacity to sway the outcome of the litigation under the applicable law." *Id.* The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." *Id.*

### A. Phase I

"If the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production in two ways." *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 715, 575 N.E.2d 734 (1991) (citing *Celotex Corp. v. Catrett* 477 U.S. 317, 331–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Brennan, J., dissenting)). The moving party may either submit affirmative evidence to negate an element of the nonmovant's claim or the moving party may demonstrate that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. *Id.* at 716, 575 N.E.2d 734.

Both the plaintiff and Harley have sued Control on a theory of negligence. In this case, in order to support a claim for negligence, the claimant must prove that Control had a duty to the claimant, that Control violated that duty, and that Control's violation was a cause of the loss incurred by the claimant. *See, e.g., Bennett v. Eagle Brook Country Store, Inc.,* 408 Mass. 355, 358, 557 N.E.2d 1166 (1990). It is questionable, in this case, whether Control had any duty to either the plaintiff or Harley. Even the case law cited by the plaintiff fails to support a determination that either Mr. Rena or Control did anything to support a determination that a duty arose from conduct, when none existed before that conduct occurred. *See*

*Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331 (1983)("The instant case concerns only the distinctive relationship between colleges and their students."); and *Dackson v. Gallo*, 1996 WL 38858 (Mass.Super.1996)(finding that defendant "assumed" duty to fix carpet by specifically granting a warranty that workmanship was free of defects and by reassuring plaintiff that he would fix it). Even if Control did have a duty, however, neither the plaintiff nor Harley has proffered evidence sufficient to support a claim of negligence.

Control's requests for admission and responses to them show two things. First, neither the plaintiff nor Harley alleges facts contrary to those submitted by Control as undisputed. Second, neither the plaintiff nor Harley can identify any witnesses with personal knowledge that Mr. Rena either plugged in the heater or observed the heater plugged in. (See Plaintiff's Answer to Request for Admissions of Defendant, Control Building Services, Inc. and Response of Harley Realty Company to Control Building Services, Inc.'s Request for Admissions). By revealing the failure of both the plaintiff and Harley to produce any witness with personal knowledge that could implicate Control, Control has demonstrated that neither the plaintiff nor Harley has a reasonable expectation of proving that Control either violated a duty or caused the fire to occur. The burden, therefore, shifts to the plaintiff and to Harley to set forth facts showing that a genuine dispute of material fact does exist.

### B. Phase II

#### 1. Introduction

Neither the plaintiff nor Harley has proffered any admissible evidence that would at least raise a material factual dispute in this case. Nonmovants may not rest upon the mere allegations of their pleadings; rather they must proffer evidence, by affidavit or otherwise, to controvert the factual showing by defendant Control or raise some other genuine dispute of material fact. *See Godbout v. Cousens*, 396 Mass. 254, 261–62, 485 N.E.2d 940 (1985). Similarly, "a mere challenge to the credibility of a movant's witnesses without any supporting evidence" does not raise a genuine dispute of material fact. *Moreau v. Local Union No. 247*, 851 F.2d 516, 519 (1st Cir.1988)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

#### 2. The plaintiff's negligence claim

The plaintiff has submitted the affidavits of Ms. Broadbent and Mr. Rena purportedly to show that Control caused the fire. These affidavits, however, even if credited, do not support any finding as to who caused the fire, nor do they factually contradict Control's assertions as to undisputed material facts. The affidavits reveal that Ms. Broadbent does not personally know who, if anyone, was in the office on the night of January 11, 1996.

Moreover, plaintiff admits that no witnesses have been identified as having personal knowledge of any facts relating to Mr. Rena's actions on January 11, 1996. The plaintiff also admits that four employees of Harley, two employees of the building management company, and the security guard on duty in the building had keys to the office on that night. In addition, Ms. Broadbent testified that the office door was sometimes inadvertently left unlocked overnight. (Deposition of Rita Broadbent at 14). The plaintiff produced no additional records or testimony to show that Mr. Rena was the last person in the office. In these circumstances, it is quite possible that one or more of many other people could have entered the office between the time it closed at 5:00 p.m. and the time the fire broke out.

The plaintiff has not offered any admissible evidence that would contradict Control's statement of undisputed facts. Rather, the plaintiff has merely presented unsupported speculation and conclusory allegations, insufficient for a finder of fact to draw a reasoned inference supporting any of plaintiff's claims. I conclude that summary judgment is proper against the plaintiff.

#### 3. Harley's claims

Summary judgment is also the proper disposition of Harley's claims. First, Harley filed its Memorandum in Opposition to Control's Motion for Summary Judgment after

the filing deadline. Under Local Rule 7.1(B)(2) and the Federal Rules of Civil Procedure, a party opposing a motion must file any opposition within fourteen (14) days of service of the motion. A period of fourteen days from August 18, 1998, ended on September 1, 1998. Harley filed its opposition on September 30, 1998, well beyond the fourteen day limit. For this reason, the court treats the assertions properly supported in the movant's statement of undisputed facts as true.

Nevertheless, I have proceeded to consider Harley's opposition on the merits. I conclude that Harley's submission in opposition does not raise a genuine dispute of material fact. Harley offers no new proof concerning the events of January 11, 1996. Harley merely calls into question the credibility of Control's witness, Mr. Rena. As stated above, questioning a witness' credibility, alone, is not enough to withstand a motion for summary judgment. Therefore, summary judgment is proper against Harley's negligence claim. The court must allow summary judgment also against Harley's claims for contribution and indemnity from Control because they are unsupported by evidence sufficient to support findings in fact of negligence and causation.

### INTERLOCUTORY ORDER

For the foregoing reasons:

(1) Control's Motion for Summary Judgment on Harley's Cross–Claim (Docket No. 18) is ALLOWED.

(2) Control's Motion for Summary Judgment as to Count II of Plaintiff's Complaint (Docket No. 19) is ALLOWED.

(3) The next Case Management Conference, which will also be the Final Pretrial Conference for all remaining parts of this case, will be held at the time previously scheduled, that is, October 22, 1998 at 3:30 p.m.