576 F.Supp. 931 (1983)
Catherine DeMICHELE
v.
INTERNATIONAL UNION OF ELECTRICAL RADIO AND MACHINE WORKERS (AFL-CIO) and its Affiliate GE-IUE (AFL-CIO) Local 283 and Edward Pryor.
Civ. A. No. 82-0476 S.
United States District Court, D. Rhode Island.
November 22, 1983.
*932 John H. Hines, Jr., Providence, R.I., for plaintiff.
Lovett, Moregera, Schefrin & Gallogly Ltd. by Aram R. Schefrin, Providence, R.I., for defendants.

MEMORANDUM AND ORDER
SELYA, District Judge.
Plaintiff initiated this action against the International Union of Electrical, Radio and Machine Workers (the "International"), its affiliate, GE-IUE (AFL-CIO) Local 283 (variously, the "Union" or the "Local"), and Edward Pryor, the Local's president. The International and Pryor were heretofore dropped as parties defendant, and the Local is the sole defendant presently before the court. The suit charges, at bottom, a breach of the Union's duty of fair representation to the plaintiff, see § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, and federal question jurisdiction is apparent. 28 U.S.C. § 1337.
The case was reached for trial, jurywaived, on October 31, 1983. At that time, the parties forswore the right to present live testimony, and submitted the cause on agreed facts as supplemented by a plentitude of documentary exhibits, deposition testimony and the like. The matter has since been amplitudinously briefed and is now in order for decision. This memorandum constitutes the court's findings of fact and conclusions of law as required by Fed. R.Civ.P. 52(a).
There is scant dispute as to the underlying facts (although the inferences and legal conclusions to be drawn therefrom are hotly contested). It would, therefore, be pleonastic to repeat them at length. A decurtate recital is, however, useful in order to place the issues into proper focus.
At all times material hereto, a collective bargaining agreement (the "Agreement"), covering all domestic operations of General Electric Company ("G.E."), was in effect. The so-called Providence Base Plant of G.E. was within the integument of the Agreement. As the relevant affiliate of the International, the Local was the exclusive bargaining agent for employees of G.E., such as the plaintiff, who toiled at the Base Plant.
DeMichele's employment at G.E. began in 1966, and her membership in the Union dates back almost to that time. After intervening lay-offs, a shift to another G.E. facility, and kindred jockeying not pertinent here, DeMichele returned to work at the Base Plant on May 16, 1977. It is undisputed that this was her seniority date for transfer and promotion purposes germane to the Agreement. Her work assignment *933 at that time was as a machine inspector (job classification R-10).
On September 16, 1981, G.E., pursuant to Article 28, § 2 of the Agreement and to an October, 1974 memorandum of understanding ancillary thereto, posted a temporary position of process auditor (classification R-12).[1] The plaintiff bid for this post, and it was awarded to her on October 14, 1981. DeMichele transferred to the slot, knowing full well that it was a temporary assignment. She worked as a process auditor until April of 1982, when G.E. announced a need to furlough inspectors.[2] This resulted in the evaporation of a job then held by one Dianne Taylor, an inspector whose applicable seniority antedated that of DeMichele (Taylor seniority date: March 28, 1977). Taylor, cut adrift in this fashion, chose to "bump" the plaintiff from the temporary niche as a process auditor. Taylor was installed in the job on April 12, 1982; and DeMichele, since no inspector positions were available, was slotted as a machine operator (job classification R-10).
The plaintiff, outraged no little and quite some by this industrial version of "Musical Chairs," complained both to a shop steward in the audit department and to Pryor. She was told that, given Taylor's admitted seniority, her displacement was proper. DeMichele, little daunted, then contacted her new shop steward (i.e., the shop steward for the machine operators) and asked to grieve the matter. Pryor did file a grievance as DeMichele had requested, but withdrew it a day or two later, apparently on advice from the International and after he had consulted with counsel for the International on or about April 15, 1982. Pryor told DeMichele that the moves were consistent with the Agreement, and furnished her with a copy. From and after that point, plaintiff made no additional efforts to procure union aid or succor. She did not attempt to invoke either the appeal mechanisms afforded by the Local or those contained in the constitution of the International. On May 14, 1982, she was placed on indefinite lay-off for lack of work.[3] She was thereafter recalled temporarily on June 21, 1982 as a machine operator (job classification R-11) and was again furloughed on August 2, 1982.[4] She resumed employment at G.E. in August, 1983 in a neoteric slot (job classification R-11), her previous position having been eliminated.
In this suit, the plaintiff has charged that the Union treated her grievance in a manner that was "clearly perfunctory," that there was "a total failure to act" by the Union, and that the actions of Pryor were "indifferent" or "so grossly deficient that his conduct could be equated with arbitrary action." These acts and omissions, she alleges, add up to a breach of the Local's § 301 duty of fair representation. She seeks variegated relief. The Union's rejoinder is two-pronged: it asseverates (i) that no violation of the duty appears on these facts, and (ii) that, in any event, DeMichele's action is foreclosed by her failure to exhaust available intra-mural union remedies before vaulting to the courthouse steps.[5] Since the court holds that the plaintiff has not shown that the defendant failed in its representational responsibilities, it is not necessary to reach the Local's alternate line of defense.
*934 Article 11, § 2 of the Agreement mandated the negotiation of a plant-by-plant supplemental agreement with respect to layoffs and re-hirings. Such an instrument (the "Supplement") was executed by and between G.E. and the Local as of May 1, 1974, and was in effect at the time of the events around which this litigation revolves. The Supplement (Exhibit "E") lies at the core of this action. It provides in material part as follows:
I. LAYOFF AND RECALL PROCEDURE
The provisions of Article VIII, Article XI and Article XII of the said GE-IUE (AFL-CIO) National Agreement shall be deemed to be part of this Local Agreement. These provisions shall be specifically applied within the Providence Base Plant bargaining unit as follows:
A. Whenever there is a reduction of forces for other than a temporary layoff, total length of plant service at the Providence Base Plant shall be the major factor determining the employees to be laid off or transferred (exclusive of upgrading or transfers to higher rated jobs). However, ability will be given consideration. The provisions of this local supplement do not apply to employees with less than six months Company service. The provisions of this supplement will be applied as follows:
1. Whenever there is a reduction in the number of employees within a job classification as determined by management, those employees not fully qualified and furthest from the job rate shall be removed first.
2. If further reductions are required, fully qualified employees with the least plant service in the affected job classification will be removed.
3. Employees displaced from a job in accordance with 1 or 2 above shall be placed in available openings in equal R-rated job classifications within their department provided they can perform the jobs in a fully qualified manner within a minimum period of time.
4. If there are no available openings in equal R-rated job classifications in their department, the employees so removed shall be placed in available openings in equal R-rated job classifications in the plant, provided they can perform the jobs in a fully qualified manner within a minimum period of time.
DeMichele reads the parenthetical phrase contained in the above-quoted portion of the Supplement as insulating her from furlough while she was holding down a temporary position in an elevated rank. And, there is some evidence that G.E. originally shared this interpretation. Yet, given the thrust of the Supplement as a whole, plaintiff's reasoning appears dedalian. Taken in context, the contested phrase seems clearly to modify the immediately-preceding verb, with the result that "total length of plant service" shall be the dominant factor as to transfers resulting from a reduction in force, but not in transfers, generally, effected by the company to place employees in higher-rated jobs. Since DeMichele had been upgraded temporarily not as a result of any management selection process targeted to her skills and abilities, but by a union-sponsored bid procedure designed to fill a better-paying slot on a transient basis, "total length of plant service" remained the appropriate "major factor" for consideration in her case when the April, 1982 layoffs occurred. Indeed, if the Supplement permitted the employer to skirt the moat of seniority by virtue of the selective use of interim promotions, G.E. could give favored treatment virtually at will to pet employees, thereby insulating such employees from the accustomed operation of the collective bargaining provisions and undercutting, in a very real way, a key ingredient in the negotiated labor/management recipe. Such a free-wheeling result should not be countenanced unless the language of the Supplement plainly requires it. That is not the case here.
At a minimum, the plaintiff in this sort of fair representation case must prove that the employer violated the collective *935 bargaining contract. Inasmuch as the Local's interpretation of the Supplement was correct, and G.E. did not breach its contractual obligations when it placed Taylor in the temporary process auditor's job previously occupied by DeMichele, the plaintiff's claims for relief must perforce collapse. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976); Vaca v. Sipes, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967).
And, even if the Local had been wrong and DeMichele had been correct, proof of unfair representation by a union depends, too, on a further showing that the "union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. at 190, 87 S.Ct. at 916. DeMichele argues that in order to sustain such an action, it is not necessary that the union's breach of duty be intentional, see Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980), but that a union's representation can be so indifferent to the rights of members or so grossly deficient in purporting to protect the rights of members that its conduct may be adjudged arbitrary and in bad faith.
Even if the court assumes arguendo that this is a correct statement of the applicable law, there is little evidence in the case at bar that the Union acted indifferently toward DeMichele or was grossly deficient in its conduct. On the contrary, DeMichele's steward spoke directly to the Union president on her behalf; the latter conferred with the plaintiff on two separate occasions, and went the figurative extra mile in discussing the situation with an attorney for the International. In fact, Pryor initially acceded to plaintiff's imprecation and filed a grievance at her behest  withdrawing it only when he was convinced by counsel that the position asserted would do violence to the sacraments of the Agreement.
The First Circuit has interpreted Vaca v. Sipes, supra, as holding that an employee does not have an absolute right to have a complaint taken through the grievance procedure. De Arroyo v. Sindicato de Trabajadores Packinghouse, AFL-CIO, 425 F.2d 281, 284 n. 2 (1st Cir. 1970). The Fifth Circuit, in Seymour v. Olin Corp., 666 F.2d 202, 208 (5th Cir. 1982), has been even more explicit:
In the context of employee grievances, the duty of fair representation is not a straitjacket which forces unions to pursue grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company... A union is accorded considerable discretion in dealing with grievance matters, and it may consider the interests of all its members when deciding whether or not to press the claims of the individual employee. Thus, the failure of a union to process an employee's grievance, even if it is possible to demonstrate that the grievance is meritorious, does not necessarily give rise to a breach of the duty of fair representation. (citations omitted).
And, while it is true that a union ought not to respond to a member's grievance request in a perfunctory manner or without carrying out necessary investigation, Abilene Sheet Metal, Inc. v. N.L.R.B., 619 F.2d 332, 347 (5th Cir.1980), that is scarcely the case sub judice. Admittedly, Pryor acted with consummate dispatch in the face of DeMichele's protest. But, there were no facts to be adduced by exhaustive searching. It was simply a matter of endeavoring to discern the likely meaning of a contract phrase, and Pryor did what was reasonably required in that regard. Plaintiff distorts by over-simplification when she argues that here, as in Smith v. Hussman Refrigerator Co., 619 F.2d 1229, 1240 (8th Cir.1980), the Union exhibited "blind adherence to a policy of favoring employees with seniority in order to avoid disputes." That is plainly not this case. It must be borne in mind that "[t]he Union is accorded great latitude ... in the handling of employee grievances, and the courts are hesitant to interfere with union decisions regarding the handling of employee grievances unless they show a reckless disregard for the rights of the individual employee." Ness v. Safeway Stores, Inc., 598 F.2d 558, 560 (9th Cir.1979). The action taken by the *936 Union in the instant matter hardly qualifies as "reckless disregard."
The court finds that, irrespective of the accuracy of contract interpretation, the plaintiff has failed to prove that the Local acted out of animus or hostility, or that it engaged in vagarious or feckless conduct, or that it handled DeMichele's complaint with other than honest purpose, candor, and good faith. On this record, the Local's bona fides are unsullied. Absent a showing of wrongful conduct or of material deficiency in the processing of her remonstrance, the plaintiff cannot, in these circumstances, prevail even if the Local's reading of the Supplement was wrong. Vaca v. Sipes, supra; Seymour v. Olin Corp., supra; Whitten v. Anchor Motor Freight, Inc., 521 F.2d 1335 (6th Cir.1975); Turner v. A.T.D.A., 468 F.2d 297 (5th Cir. 1972); De Arroyo, supra. See also Early v. Eastern Transfer, 699 F.2d 552, 555 (1st Cir.1983). Perfection, after all, is neither mandated by § 301 nor realistically to be required of a union in representing its membership.
For these reasons, the plaintiff's complaint is denied and dismissed. Judgment shall enter accordingly for the defendant for costs.
It is so ordered.
NOTES
[1] Two process auditors were then disabled, and the filling of the position was temporary since each retained the right, under the Agreement, to return to work at her former post within one year of the date upon which her sick leave commenced.
[2] Since the plaintiff was only working temporarily as an auditor, her seniority was in her permanent position (as an inspector) and she was, therefore, within the scope of the lay-offs.
[3] Taylor was laid off a week later.
[4] Taylor received the same recall, and was subjected in identical fashion to the August, 1982 furlough.
[5] While other defenses were raised in the Union's answer, these were neither briefed nor argued. They are, therefore, deemed to have been abandoned. United States v. Kobrosky, 711 F.2d 449, 454 (1st Cir.1983); A & H Mfg. Co. v. Contempo Card Co. Inc., 576 F.Supp. 894 at 896 n. 1 (D.R.I.1983).