Steven HUSSEY, Plaintiff,

v.

QUEBECOR PRINTING PROVIDENCE INC., and Providence Newspaper Printing Pressmen's Union No.12 Graphic Communications International Union, Defendants.

No. CIV. A. 96–234L.

United States District Court,
D. Rhode Island.

April 14, 1998.

Henry V. Boezi, III, Providence, RI, for Plaintiffs.

James M. Green, Robert G. Sullivan, Powers, Kinder & Keeney, Providence, RI, for Defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

Plaintiff, Steven Hussey, ("plaintiff" or "Hussey"), brought this action in the Rhode Island Superior Court sitting in Providence County against Quebecor Printing Providence, Inc., ("Quebecor") and Providence Newspaper Printing Pressman's Union No. 12 Graphic Communications International Union (the "Union"), (collectively, "defendants"), after Quebecor terminated his employment at its Providence printing plant. The complaint alleges that plaintiff's termination violated the collective bargaining agreement in effect between the Union and Quebecor ("the Agreement"), and that the Union breached its duty of fair representation owed to plaintiff in its handling of his grievance. Defendants removed the case to the District Court. The matter is presently before the Court on each defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Quebecor contends that plaintiff was terminated for cause after he was involved in a theft at the plant, and thus, there was no breach of the Agreement. Quebecor also moves for summary judgment on its counterclaim for indemnification against plaintiff for the portion of the settlement it negotiated arising from the coupon thefts which is attributable to plaintiff. The Union's motion is predicated on the contention that it did not breach its duty of fair representation in processing plaintiff's grievance.

## I. Background

Plaintiff, a resident of Cranston, Rhode Island was employed as a "jogger"[1] by Quebecor, a commercial printing company, from approximately November 1977 to April 1997. Plaintiff had been a member of the Union since January, 1978.

In the spring of 1995, Quebecor produced a promotional flier for Caldor Corporation ("Caldor"), a department store chain. Caldor was Quebecor's largest client and accounted for 52% of its sales. As a part of this promotion, discount scratch-off coupons for 5% to 50% off were attached to the sale fliers as the fliers were printed. The percentage discount of each coupon could only be revealed by scratching off the ticket, which was to be done by a Caldor checkout person. The face of the coupon contained the statement that "This coupon has no cash value."

The coupons for up to 20% off were fed directly into the presses and automatically distributed in the fliers. The coupons for a higher percentage discount were stored in a vault until they were attached by hand to the flier by one of the joggers given that responsibility. Donna Robinson ("Robinson") was one of the joggers with this responsibility and she worked the same shift as plaintiff. Plaintiff was not given access to the higher percentage coupons.

Robinson previously had given 50% off coupons to a few Quebecor employees without the knowledge or permission of her supervisors. Plaintiff was aware of this and twice asked Robinson to provide him with a high discount coupon, one time specifically requesting a 50% off coupon. He intended to use the coupon to purchase a $189.00 barbeque grill from Caldor. Plaintiff claims Robinson told him "I can't do that, I will get in trouble" when he made his request. After initially refusing his entreaties, Robinson gave plaintiff a discount coupon. Although the discount amount of the coupon was covered by the scratch-off material, plaintiff knew that the coupon was for greater than 20% off because the coupons in Robinsons' possession were the "premium" coupons. Plaintiff claims, however, that when he asked Robinson if the coupon was a 50% coupon, she told him that it was not.

Plaintiff gave the coupon to his wife and told her to buy the barbeque grill. She also purchased a camera and four rolls of film. When she presented the discount coupon to the clerk at Caldor, it was revealed to be a 50% off coupon, enabling her to purchase $416.00 worth of goods for $208.00. According to plaintiff, neither he nor his wife knew

---

1. According to the record, a jogger is one who "takes a bundle of printed material ... and stacks [it] on a skid for shipping."

the value of the coupon until it was presented at the Caldor store.

In April of 1995, Caldor notified Quebecor of irregularities in the redemption of coupons in the Providence area. Quebecor in turn notified the Union of its intention to investigate potential thefts. Union officials, including President William Piccirillo ("Piccirillo") and Secretary/Treasurer Charles Perry ("Perry"), were present when Quebecor interviewed various employees, including plaintiff. Plaintiff admitted to removing a discount coupon from the plant and immediately was suspended along with six other employees who admitted to having done the same thing.

Since September, 1990, Quebecor has displayed a list of Plant Rules on its premises. The Rule relevant to this case, (Plant Rule No. 9), specifically states that:

No employee shall remove, receive, and/or posses property which he or she knows or has reason to suspect is owned by the company, a customer, or any other employee unless duly authorized to do so in writing.

Less than $50: 1st offense, 5 day D.L.O
2nd offense, Discharge

More than $50: 1st offense—Discharge

On April 12, 1995, plaintiff and the six other employees were terminated from employment at Quebecor for having violated Plant Rule No. 9 in connection with the theft of the Caldor discount coupons. Six of the employees were members of the bargaining unit and five of those Union employees were joggers. The sixth terminated employee was a journeyman pressman and the seventh was a supervisor. Since that time, five joggers have been hired to replace those terminated and no further terminations of joggers have occurred.

Quebecor informed the Union that it viewed the thefts as a serious breach of security. On April 17, 1995, the Union filed a grievance on behalf of the six terminated Union employees including plaintiff, in accordance with the Agreement and requested a Joint Standing Committee meeting with respect to the discharge of the employees. Such a meeting occurred on April 27, 1995, at which time the Union sought a reduction in the penalty. Quebecor refused. Plaintiff claims that this grievance was filed without any investigation on the part of the Union. In May of 1995, Plaintiff was informed by Piccirillo that attempts to have him reinstated had failed and that the Union would file a demand for arbitration with the American Arbitration Association.

On June 20, 1995, a special Executive Board meeting of the Union was held and it was decided to recommend that arbitration be requested on condition that the Board would reevaluate the Union's position when an arbitrator was selected. On June 27, 1995, a general Union meeting was held where the membership voted to adopt the Board's recommendation. A demand for arbitration was filed on June 28, 1995 and the Union requested immediate reinstatement of the discharged employees with back pay. Although such a demand is usually prepared by the Union's attorney, this demand was prepared solely by Secretary/Treasurer Perry. The demand stated that termination of the affected employees was too severe a punishment.

After the demand for arbitration was filed, Piccirillo again met with the Human Resources Director in an effort to convince Quebecor to reduce the punishment of the employees. His request was denied. On July 11, 1995, another Executive Board meeting was held where the President reported that Quebecor had become more "hard nosed" about the dismissed employees. He also stated that he was having little success with his attempt to negotiate a long term suspension for the employees. On July 25 and August 8, 1995, the President again reported that he was having no success in negotiating another solution with Quebecor.

At the meeting on August 8, 1995, Piccirillo reported that Caldor, Quebecor's major client, was pressing a claim for $246,000 against Quebecor for damages arising out of the coupon thefts. Furthermore, the attorney for the Union offered the opinion that the grievance lacked merit and would probably not succeed on the merits in an arbitration. On August 12, 1995, the Executive Board voted to recommend to the general

membership that the demand for arbitration be withdrawn. Piccirillo, Union President for over thirty-two years, stated that he does not remember another instance in which the Executive Board submitted a recommendation for withdrawal of an arbitration demand to a vote of the entire Union membership.

On September 17, 1995, at a Union membership meeting, the Executive Board recommended that the petition for arbitration be withdrawn and presented the matter to a vote of all members in good standing, including plaintiff. The Executive Board claims that it considered the likelihood of success in the arbitration, the cost and impact such a proceeding would have on the Caldor contract, and the interests of the majority of the Union members in making its decision. Notice of the referendum vote was posted in each of the work locations where the Union represented employees. Ballots were also send to each of the terminated employees, including plaintiff, at their residences. The final vote was 162 in favor of withdrawing the demand and 40 to proceed. According to plaintiff, this all occurred without the Union addressing or bringing the issue of the value of the coupon to the attention of the general membership.

Quebecor and Caldor subsequently negotiated a settlement of Caldor's claim for damages in the amount of $100,000. Caldor is currently in Chapter 11 bankruptcy proceedings in the Southern District of New York. Caldor and Quebecor have agreed to effectuate the settlement of Caldor's claim by means of a $100,000 reduction in the amount of Quebecor's proof of claim in Caldor's bankruptcy proceedings.

On April 4, 1996, plaintiff filed his complaint in the Rhode Island Superior Court. The case was removed to this Court by defendants on April 25, 1996.

Plaintiff essentially claims that his termination was without just cause and amounted to a veiled attempt to reduce the number of joggers employed by Quebecor, which would be a clear violation of the Agreement. Plaintiff further contends that the Union breached its duty of fair representation owed to him by failing to investigate the issue of whether the coupon's value was greater or less than $50.

Plaintiff asks that this Court reinstate him to his former position and award him damages and back pay to compensate him for his losses.

On April 30, 1996, Quebecor filed a counterclaim pursuant to 28 U.S.C. § 1367, requesting that plaintiff indemnify the corporation for whatever portion of the $100,000.000 settlement with Caldor that corresponds to his wrongful acts.

After discovery, on October 17, 1996, each defendant filed a motion for summary judgment. Quebecor also moved for summary judgment on its counterclaim. Plaintiff duly objected to the motions and the parties filed briefs. After hearing oral arguments, the Court took the matter under advisement. It is now in order for decision.

## II. Standard for Decision

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured

weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

## III. Discussion

■ The right of an employee to sue his employer for breach of a collective bargaining agreement has long been established. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983). An employee subject to a collective bargaining agreement ordinarily must exhaust contractual remedies before bringing an action. This requirement is suspended, however, if the employee can show that the Union breached its duty of fair representation. *Kissinger v. United States Postal Serv.*, 801 F.2d 551, 553 –554 (1st Cir.1986), citing *Vaca v. Sipes*, 386 U.S. 171, 185–186, 87 S.Ct. 903, 914–915, 17 L.Ed.2d 842 (1967).

In his complaint, plaintiff has asserted what is commonly known as a hybrid § 301/ fair representation claim. It is a claim that Quebecor violated § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) by violating the Agreement combined with a claim that the Union has ignored the duty of fair representation implied under the National Labor Relations Act, 29 U.S.C. § 151 et seq., (the "N.L.R.A."), with regard to the company's breach of contract. *Paulo v. Cooley Inc., Local Union Independent No. 1*, 686 F.Supp. 377, 380 (D.R.I.1988). To succeed on such a combination claim, plaintiff must prove that Quebecor broke the Agreement and that the Union violated its duty of fair representation with respect to the actions of the employer. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990); *see also DelCostello*, 462 U.S. at 164, citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–67, 101 S.Ct. 1559,

67 L.Ed.2d 732 (Stewart, J., concurring in the judgment) ("To prevail against either the company or the union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union."). These two claims are "inextricably linked" *Demars v. General Dynamics Corp.*, 779 F.2d 95, 97 (1st Cir. 1985) and "failure to prove either one of them results in a failure of the entire hybrid action." *Miller v. United States Postal Serv.*, 985 F.2d 9, 11 (1st Cir.1993), citing *DelCostello*, 462 U.S. at 164–165.

It is clear to the Court from the materials submitted that there are no facts in dispute which need to be evaluated by the trier of fact before the legal issues can be decided. It is also evident, after analyzing the relevant case law, that under the facts of this case, even when viewed in the light most favorable to plaintiff, both the claim for breach of the Agreement and the claim for violation of the duty of fair representation must fail. Defendants' motions for summary judgment, therefore, must be granted. There are however, material facts in dispute regarding Quebecor's counterclaim and since its disposition must await evaluation by factfinders, summary judgment cannot be entered at this time.

### A. The Breach of the Collective Bargaining Agreement

■ Quebecor claims to have fired plaintiff for just cause in accordance with Plant Rule No. 9 after his theft of the Caldor 50% discount coupon. Plaintiff does not contest that he wrongfully removed the coupon from the plant. He claims, however, that since the coupon was not worth $50.00, Plant Rule No. 9 only permits his suspension, not his dismissal. Thus, he contends that he was not fired for just cause, and Quebecor violated the Agreement. He also asserts that the true motivation underlying his dismissal was Quebecor's attempt to reduce the number of joggers it employed. Quebecor flatly denies this allegation.

The main issue surrounding this matter is the determination of whether the stolen coupon should be valued at above or below

$50.00. If its value is above $50.00, plaintiff's dismissal was in accordance with the plant rule which stated that a theft of more than $50.00 from the plant would result in an immediate dismissal. If its value is below $50.00, plaintiff should have received a 5 day suspension for his first offense rather than dismissal, and Quebecor's decision to terminate him would be considered a breach of the Agreement. Plaintiff argues that this produces a genuine issue of material fact which must be decided by the trier of fact. This Court disagrees. Plaintiff's attempt to formulate a dispute surrounding the value of the coupon misses the mark since the coupon's value to him was clearly more than $50.00. No legitimate argument can be made to the contrary.

The briefs of all three parties discuss the value of the coupon. Citing case law and numerous statutes, they attempt to analogize the discount coupon to a cashier's check or other negotiable instrument. This Court need not engage in that kind of analysis. The value of the coupon wrongfully taken from the plant is a question of fact in this case, and it is undisputed that it was actually worth $208.00 to plaintiff. Plaintiff's argument that it had little or no cash value on its face is sheer nonsense. He ignores the fact that he used the coupon to purchase $416.00 worth of goods for $208.00. Without the coupon, he would have been required to pay $416.00 for the items; with it, he paid $208.00. The value of the coupon to this plaintiff was, therefore, $208.00, pure and simple.

Since the value of the property plaintiff took from the plant was greater than $50.00, his termination was in accordance with posted Plant Rule No. 9. Plaintiff's actions clearly provided Quebecor with just cause to terminate his employment and he was punished in accordance with Plant Rule No. 9, which called for his dismissal. Quebecor, in no way, violated the Agreement. Plaintiff's assertion that Quebecor's underlying motivation was to reduce the number of joggers in contravention of the Agreement is totally irrelevant. In any event, the evidence is clear that Quebecor hired joggers to replace those fired as a result of the coupon thefts,

and there have been no reductions in that position since that time.

Based on the undisputed facts of this case, plaintiff was terminated for just cause and there was no breach of the Agreement by Quebecor. Since there are no genuine issues of material fact remaining for determination, Quebecor is entitled to judgment as a mater of law and its motion must be granted.

### B. The Breach of the Duty of Fair Representation

 Plaintiff argues that the Union breached the duty of fair representation owed to him when it failed to take his grievance to arbitration. The Union counters that this was a decision entirely within its discretion which was made after consideration of all the facts, including the likelihood of success of the arbitration and the impact an arbitration would have on the other members of the Union. Success in a breach of fair representation case requires that the plaintiff's underlying claim against the employer be meritorious. As previously stated, failure of either part of the hybrid claim results in the failure of the entire action. Here, the plaintiff's claim for breach of the Agreement is meritless. Therefore, plaintiff's fair representation claim fails. In any event, his claim would be ineffective anyway. The Court will explicate.

The duty of fair representation "judicially developed as a necessary corollary to the [union's] status of exclusive representative," *Achilli v. John J. Nissen Baking Co.*, 989 F.2d 561 (1st Cir.1993), quoting *The Developing Labor Law*, 1409 (Patrick Hardin ed., 3d ed.1992). It is a union member's protection against the tyranny of the union majority, *Voccio v. General Signal Corp.*, 732 F.Supp. 292, 295 (D.R.I.1990), and arose from a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act. *Vaca*, 386 U.S. at 177. Over time, the doctrine has evolved so that the duty now applies to essentially all union activities of N.L.R.A. certified unions. *See Ibid.; Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

The duty of fair representation has been defined as follows:

> ...under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

*Vaca,* 386 U.S. at 177, citing *Humphrey v. Moore* 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). There has been significant litigation over the scope of this language and its application to various union activities. The allegation here, that the union breached its duty in failing to bring plaintiff's grievance to arbitration, is frequently the underlying claim in fair representation cases.

Usually, procedures for bringing actions for breach of the collective bargaining agreement are governed by the agreement itself. The union, therefore, necessarily becomes involved in the disposition of the grievance. In *Ayala v. Union De Tronquistas De Puerto Rico, Local 901,* 74 F.3d 344 (1st Cir.1996), the Court noted that a union's duty of fair representation does not amount to an employee's absolute right to have any and every grievance taken to arbitration:

> In the context of employee grievances, the duty of fair representation is not a straightjacket which forces unions to pursue grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company .... A union is accorded considerable discretion in dealing with grievance matters, and it may consider whether or not to press the claims of an individual employee.

74 F.3d 344, 345–346, citing *Seymour v. Olin Corp.,* 666 F.2d 202, 208 (Former 5th Cir. 1982).

■■ A decision not to arbitrate a claim is not in and of itself an arbitrary or capricious action and, thus, is not automatically a breach of fair representation. *Williams v. Sea–Land Corp.,* 844 F.2d 17, 19 (1st Cir. 1988). Furthermore, mere negligence or erroneous judgment will not constitute a breach of the duty of fair representation,

*Miller,* 985 F.2d at 11, as a violation can only occur when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.* at 11, citing *Vaca,* 386 U.S. at 190. The United States Supreme Court has held that a union's activities are arbitrary only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), as to be irrational." *O'Neill,* 499 U.S. at 67 (1991).

In evaluating whether the union acted in good faith in dealing with the employee's grievance, it is important to keep in mind that unions are given great latitude and discretion in this area and "courts are hesitant to interfere with union decisions regarding the handling of employee grievances unless they show a reckless disregard for the rights of the individual employee." *DeMichele v. Int'l Union of Electrical Radio and Machine Workers (AFL–CIO),* 576 F.Supp. 931, 935 (D.R.I.1983), citing *Ness v. Safeway Stores, Inc.,* 598 F.2d 558, 560 (9th Cir.1979).

Given the facts of this case, plaintiff falls remarkably short of being able to prove that the Union violated its duty of fair representation. Plaintiff has clearly failed to show bad faith, arbitrary conduct or discriminatory behavior on the part of the Union. Not only did the Union fairly represent plaintiff, but it can be said that the Union went beyond the requirements of fair representation when it submitted the matter to a vote of the full union membership, a step which had not been taken in the past. The Union President and other officials were present when Quebecor interviewed plaintiff regarding his involvement in the theft of the coupons. Those officials heard plaintiff admit to asking for and receiving a coupon which he knew he was not entitled to receive and they were present when he admitted that his wife used the coupon to purchase $416.00 worth of goods for $208.00. Plaintiff claims that the Union breached its duty owed him by failing to take into account the fact that the wording of the coupon says "no cash value" and by failing to further investigate the situation.

The smoke and mirrors put forth by plaintiff are to no avail. The coupon he took was worth $208.00 in this case. The Union was aware of the facts and had no reason to assume that the coupon was worth less than $208.00 and no duty to investigate such an obvious fact. No more can be expected of the Union when one of its members admits to stealing from the employer and the employer discharges the union member in accordance with posted plant rules.

Even knowing these facts, the Union did not automatically dismiss plaintiff's grievance. The Union made numerous attempts to negotiate a less severe punishment with Quebecor but was unsuccessful. The Union's failure to get plaintiff the result he wanted does not amount to a breach of the duty of fair representation. Before deciding to withdraw the arbitration demand, the Union met with its legal counsel and considered the facts of the case, the likelihood of success in arbitration, the cost of arbitration and the impact of pursuing the grievance on the other Union members.

Plaintiff argues that the Union officials' recommendation to withdraw the arbitration demand was irrational because they considered the possible impact arbitrating the matter would have on Quebecor's relationship with Caldor without having documented proof from Caldor as to its anticipated response to arbitration or reinstatement of the dismissed employees. It is entirely legitimate for the Union to assume that Quebecor's major client would be displeased with the events which had transpired and that Quebecor's business relations with Caldor were not as stable as they were before the thefts. Even then, after the Executive Board determined that pursuing the grievance was not in the best interest of the Union, the matter was submitted to the entire Union membership, including the dismissed employees, for a vote. Only after the Union membership voted not to pursue arbitrating the grievance did the Union officials withdraw their demand for arbitration. These actions clearly do not show a reckless disregard for the rights of the individual employee. *DeMichele,* 576 F.Supp. at 935.

Even viewing the facts in the light most favorable to plaintiff, he cannot support the conclusion that the Union's approach to this matter was so far outside of the range of reasonableness as to be irrational. *Air Line Pilots,* 499 U.S. at 67 (1991). Plaintiff simply cannot make out a claim that the Union violated its duty of fair representation in this case. For the reasons stated herein, the Union's motion for summary judgment is granted.

## C. The Counterclaim

■ Quebecor has also moved for summary judgment in its favor on its counterclaim against plaintiff for indemnification for whatever portion of the settlement with Caldor plaintiff is responsible for. Summary judgment is rarely granted when the moving party is the one that bears the burden of proof at trial. *Aurelio v. R.I. Dep't of Admin., Div. of Motor Vehicles,* 985 F.Supp. 48, 54 (D.R.I.1997). Accordingly, the facts on this record cannot support the granting of summary judgment for Quebecor on the counterclaim.

There are simply too many factual issues in dispute for pretrial resolution of this matter. In any event, Quebecor faces an up hill battle in pursuing this claim since it must prove that Caldor would have succeeded on the merits of the claim against Quebecor, prove what damages Caldor would have recovered to show that the settlement was reasonable, and finally, what portion is attributable to plaintiff. It will be difficult for Quebecor to prevail on that counterclaim. Therefore, its motion must be denied.

## IV. Conclusion

For the foregoing reasons, Quebecor's motion for summary judgment on the claim for breach of the Agreement and the Union's motion for summary judgment on the claim for violation of the duty of fair representation hereby are granted. Quebecor's motion for summary judgment on its counterclaim is denied. No judgments will enter in this case until all claims are resolved.

It is so ordered.