**Sharon DeLUCCA, Plaintiff,**

v.

**NATIONAL EDUCATION ASSOCIATION OF RHODE ISLAND, Roger Williams University Faculty Association, Inc., and Melvyn A. Topf, Defendants.**

**No. C.A. 13–155L.**

United States District Court, D. Rhode Island.

Signed May 5, 2015.

Dante J. Giammarco, Law Offices of Dante J. Giammarco, Esq., Inc., Warwick, RI, for Plaintiff.

Gerard P. Cobleigh, Cobleigh & Giacobbe, Warwick, RI, Dennis T. Grieco, II, Grieco Law, Warwick, RI, for Defendants.

### DECISION AND MEMORANDUM

RONALD R. LAGUEUX, Senior District Judge.

This matter is before the Court on the Motion for Judgment on the Pleadings brought by all Defendants. Plaintiff Sharon DeLucca is a professor at Roger Williams University and a member of its faculty union, Defendant Roger Williams Faculty Association. Defendant National Education Association of Rhode Island handles all grievances, arbitrations and collective bargaining for the Roger Williams Faculty Association (these entities will be referred to collectively as "the Union"). Defendant Melvyn Topf is the chair of the Union's grievance committee. In her Complaint, Plaintiff alleges that the Union breached its duty of fair representation when it decided that it was not going to pursue her grievance to arbitration; and that all Defendants, in participating in that decision, committed the tort of intentional infliction of emotional distress. For the judgment on the pleadings, dismissing Plaintiff's Complaint in its entirety.

### *Standard of review*

■ Defendants move to dismiss the claims against them based upon the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The standard of review for this type of motion is "the same as that for a motion to dismiss under Rule 12(b)(6)." *Frappier v. Countrywide Home Loans, Inc.,* 750 F.3d 91, 96 (1st Cir.2014). In considering a Rule 12(b)(6) motion to dismiss, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). The United States Supreme Court, in abrogating *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), restated the standard as follows: "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While detailed factual allegations are not required, "a formulaic recitation of the elements of a cause of action" is not sufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

■ Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001). Courts, however, make an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents

sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). When a complaint's factual allegations are linked to and dependent upon a document whose authenticity is not challenged, such a document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. *Alternative Energy, Inc.*, 267 F.3d at 33.

In the present case, Defendants have submitted the arbitration award resulting from the arbitration proceeding whose withdrawal and reinstatement are the subject of Plaintiff's claims. Although she does not dispute the authenticity of the arbitration award submitted by Defendants, Plaintiff has objected to its submission, arguing that it is not relevant to her claims. Based on the standard set forth in *Watterson v. Page*, and the law pertinent to Plaintiff's allegations, the Court has reviewed the arbitration award and, to the extent that it is relevant, considered it.

### Background

Plaintiff is a full-time tenured professor who teaches graphic design in Roger Williams University's department of communications and graphic design. According to her Complaint, Plaintiff was assigned by the University, and was performing, additional professional duties, beyond the scope of a professor's duties, in violation of the collective bargaining agreement between the University and the Union ("the Contract"). Plaintiff filed a grievance, demanding that the area of graphic design be designated as an independent department and that she be named its chair, with appropriate compensation and benefits. Step One of that grievance was heard and denied in December 2010. The grievance was denied again at Step Two in January 2011. The Union agreed to pursue the grievance to arbitration, as provided for by the Contract, and the first session was scheduled for July 2011. No representative from the Union contacted Plaintiff to prepare for the arbitration. However, the July 2011 session was eventually postponed and rescheduled for November 2011, at the request of the University.

On September 30, 2011, Plaintiff met with several representatives from the Union to prepare for the arbitration. During the course of this meeting, Plaintiff and the Union representatives got into an argument. In her Complaint, Plaintiff describes the meeting as "verbal assault" on her,

> about the arbitration, the underlying claim and issues not within the scope of or purview of NEARI [the Union], including demanding that Plaintiff settle all her issues with RWU [the University], and still without knowing anything about the substance of the original grievance or the alleged violation of the CBA [the Contract]. The meeting was completely unproductive and resulted in no preparation for the arbitration.

Complaint ¶ 19. The Union followed up with a letter to Plaintiff on October 17, 2011, summarizing its account of the meeting. Plaintiff characterizes the letter as "self-serving and not representative of the truth of what happened at the meeting." Complaint ¶ 16. The arbitration was then postponed again, and rescheduled for April 2012.

In March of 2012, Plaintiff received a letter from Union representative Jeanette Woolley, advising her that the arbitration had again been postponed. According to Plaintiff, the letter also,

> asserted that two (2) meetings had been scheduled with and then canceled by the Plaintiff, and gave a summation of what Ms. Woolley knew of the grievance and substance of the arbitration, ignoring

the aspect of the grievance whereby Plaintiff was seeking additional compensation for work performed beyond the scope of the CBA for a tenured, full-time faculty member of RWU. Most importantly, Ms. Woolley advised the Plaintiff that if Plaintiff [sic] did not receive supporting evidence by April 16, 2012, that Ms. Woolley was going to recommend that the arbitration be withdrawn.

Complaint ¶ 22. Receiving no guidance from the Union as to what supporting evidence was needed, Plaintiff did not provide additional documentation prior to the Union's deadline. On May 3, 2012, Plaintiff received an email from a different Union representative, reminding her to produce additional documentation and notifying her that the arbitration had been rescheduled to June 18, 2012. The same day, Jeanette Woolley contacted Defendant Topf and recommended that the arbitration be withdrawn. Topf, in turn, recommended to the president of the Roger Williams Faculty Association that the arbitration be withdrawn. Plaintiff was not contacted beforehand, nor was there any kind of meeting or vote of the Union's grievance committee or of its general membership. Plaintiff learned of these actions on the evening of May 3, when she received a copy of the recommendation that Topf had sent to the president of the Roger Williams Faculty Association.

Plaintiff appealed the grievance committee's decision, at "much effort and expense." She sought help in this effort from campus-based Union representatives, but received no assistance. In October 2012, the Union reversed itself and reinstated the arbitration. Plaintiff filed this Complaint in March 2013—several months after the arbitration was reinstated, but before it was heard.

### Additional background

The arbitration award[1] submitted by Defendants indicates that the hearing went forward on June 27, 2013, and the arbitrator rendered his ruling in August. In his decision, the arbitrator wrote: "The grievant testified she was performing the work performed by a department chair without the compensation or benefits provided by the Agreement." Plaintiff sought a ruling that the University's academic areas of communications and graphic design be split into two departments, with Plaintiff receiving the post and title, as well as retroactive and prospective compensation, of Department Chair of Graphic Design. The arbitration hearing consisted exclusively of Plaintiff's direct testimony. The parties then submitted briefs on the issue of whether or not Plaintiff's grievance was substantively arbitrable under the Contract.

After setting forth the positions of both sides and complimenting them both on their "scholarly, well researched, well written and very persuasive" briefs, the arbitrator concluded that the grievance was not arbitrable; that is, that Plaintiff's complaint and desired remedy were outside the scope of the Union Contract. The arbitrator determined that nothing in the Contract demonstrated the parties' intent to strip the University of the exclusive authority to establish academic departments and appoint department chairs, nor to subject such matters to arbitration. The arbitrator cited the Contract's management rights clause which provides that the University retains all rights not ex-

---

1. The American Arbitration Association identifies the ruling as: "In the Matter of Arbitration Between: ROGER WILLIAMS FACULTY ASSOCIATION (NEARI/NEA) And ROGER WILLIAMS UNIVERSITY No. 11 300 00316 11 (Sharon DeLucca—University failed to recognize And compensate grievant for her work as Department Chair back to July 1, 2006).

pressly addressed and altered by the Contract. The arbitrator wrote, "Prior to the execution of this Agreement the University possessed the 'exclusive' right to set its department structure. Thus, for an arbitrable dispute to exist, one would have to look for a 'specific and express' limitation on that authority." The arbitrator went on to quote from the Contract: "The implementation of departments and department chairs is at the discretion of RWU." The arbitrator concluded, after a thorough review of the contractual language, that "Nothing ... sets forth any criteria that the University must consider in determining whether a major like the grievant's should be spun off into its own department."

> Equally problematic is so much of the claim for relief as seeks the grievant's appointment as department chair. Such a remedy would circumvent the parties' established procedures for selecting a department chair and thus, such a remedy would appear to contravene, much less draw its essence from the Agreement. The specific relief sought by the grievant thus appears to be outside the scope of the arbitrator's authority.

The arbitrator concluded that not only was it beyond his authority to order the University to formally designate Plaintiff a department chair, but that the Contract also did not permit the arbitrator to consider the Union's claim that Plaintiff should be compensated as a department chair, based on her duties. Consequently, the grievance was dismissed.

### Analysis

#### Breach of duty of fair representation

In Counts I and III, Plaintiff claims that the two union entities, Defendant National Education Association of Rhode Island and Defendant Roger Williams University Faculty Association, Inc., breached their duty to fairly represent her. Plaintiff's Complaint focuses exclusively on the Union's act of withdrawing the arbitration on May 3, 2012, forcing Plaintiff to spend time and money appealing its withdrawal during the summer of 2012, with no help from any of the Union's representatives. On October 11, 2012, the Union's grievance committee voted unanimously to reinstate the arbitration. The Plaintiff makes no allegations in the Complaint that the Union failed to diligently pursue the arbitration; and, in fact, as mentioned earlier, the Complaint was filed March 8, 2013, several months before the arbitration hearing took place. In her memorandum, Plaintiff argues strenuously that the Court should consider only the allegations in the Complaint, and should not consider the arbitrator's ruling. Based on the allegations in the Complaint then, Plaintiff is arguing that it is a violation of federal law for the Union to temporarily withdraw the arbitration,[2] compelling her to appeal the withdrawal. The fact that Plaintiff's appeal to the Union's grievance committee resulted in the arbitration's reinstatement is of no consequence to Plaintiff's claim, nor is the eventual outcome of the arbitration. Plaintiff is effectively sticking her head in the sand, ignoring all events subsequent to the withdrawal of the arbitration, and asking the Court to do the same. In order to address thoroughly all of Plaintiff's claims, the Court has undertaken to examine Plaintiff's claim from this perspective, and holds that it cannot prevail.

#### Union has discretion to withdraw arbitration

A union has wide discretion in determining whether or not to pursue a grievance to arbitration:

---

**2.** According to the Union, the arbitration was withdrawn because Plaintiff failed to provide documentation to support her grievance.

Plaintiff does not dispute this, but claims that she did not know what documentation the Union wanted.

In all events, disaffected employees do not possess an absolute right to have their union shepherd a complaint through the grievance process to the bitter end. In the context of employee grievances, the duty of fair representation is not a straitjacket which forces a union to pursue grievance remedies under the collective bargaining agreement in every case where an employee has a complaint against the company. *Ayala v. Union de Tronquistas,* 74 F.3d 344, 345–46 (1st Cir.1996)(internal quotations omitted). Even if a union's decision is based on a misconstruction of the collective bargaining agreement, the union's conduct does not rise to the level of a breach of duty unless it is "arbitrary, discriminatory or in bad faith." *Id.* at 346. Although Plaintiff has described one meeting that devolved into an argument, she has made no factual allegations that indicate that the Union acted arbitrarily, in bad faith or that its motives were discriminatory. Furthermore, aside from some frustration and time spent appealing the Union's initial decision, it is not clear what harm Plaintiff suffered during the five-month period that the arbitration was withdrawn. As a matter of law, the Court holds that it was not a breach of its duty of fair representation for the Union to temporarily withdraw Plaintiff's arbitration.

### The Union's preparation for the arbitration

At any rate, the Union reinstated Plaintiff's grievance and had already done so at the time Plaintiff filed her Complaint. Since then, Plaintiff has alleged, at oral argument and as an alternative argument in her memorandum, that the Union handled the arbitration in a perfunctory manner because it failed to prepare the Plaintiff and failed to interview witnesses. As part of this alternative argument, Plaintiff claims that the damages resulting from Defendants' breach of its duty of fair representation should include "the additional compensation for the work performed by Plaintiff far beyond the duties of a full-time professor." Based on this allegation, the Court infers that Plaintiff is arguing that the Union's failure to achieve a favorable ruling from the arbitrator is also an actionable breach of its duty of fair representation.

Arbitration decisions are generally deemed final by the courts, when arbitration is the decision-making process agreed to by the parties. "When a collective bargaining contract calls for final and binding arbitration, as here, an arbitration decision is ordinarily final, for the employees have obtained what their union has bargained for." *Sear v. Cadillac Auto. Co. of Boston,* 654 F.2d 4, 7 (1st Cir.1981). However, courts may allow for exceptions in instances where there is evidence that a union was guilty of malfeasance or bad faith, or pursued the arbitration in a perfunctory manner, "seriously undermining the integrity of the arbitral process." *Id.* This Court wrote previously:

> In evaluating whether the union acted in good faith in dealing with the employee's grievance, it is important to keep in mind that unions are given great latitude and discretion in this area and courts are hesitant to interfere with union decisions regarding the handling of employee grievances unless they show a reckless disregard for the rights of the individual employee.

*Hussey v. Quebecor Printing Providence Inc.,* 2 F.Supp.2d 217, 224 (D.R.I.1998).

In her Complaint, Plaintiff indicates that the Union had not been diligent in its efforts to prepare for the arbitration. The Complaint's factual allegations cover the time period from February 2011 to March 2013, when the arbitration hearing

was scheduled and postponed several times. As previously noted, the Complaint was filed on March 8, 2013. The arbitration finally went forward on June 27, 2013. Plaintiff has not alleged that no preparation took place during the four months immediately before the hearing, and, due to the timing of her Complaint, she cannot make this allegation. In accordance with Fed.R.Civ.P. 12(c), the Court accepts as true Plaintiff's allegations that the Union did not spend time with her preparing for the arbitration prior to the filing of the Complaint. However, there is no reason to assume that the Union did not buckle down and begin preparations after it decided to reinstate the arbitration.

At oral argument, Plaintiff argued that the Union's pursuit of the arbitration was perfunctory; however, no additional factual allegations from the post-reinstatement time period were advanced to support this theory. In fact, the only evidence before the Court concerning the Union's preparations come from the arbitrator who describes the Union's brief as "scholarly, well researched, well written and very persuasive." Based on the arbitrator's remarks, it appears the Union was adequately prepared. Certainly, there are no allegations that support a claim that the Union acted with malfeasance, in 'reckless disregard' of Plaintiff's rights, or that its conduct weakened the integrity of the arbitral process. The Court concludes that none of the exceptions to the general rule of the finality of arbitrated decisions apply in this instance.

### The merits of Plaintiff's grievance

 The merits of Plaintiff's underlying grievance against the University are inextricably linked to her claim that the Union breached its duty of fair representation, because to prove that the Union breached its duty, she must also establish that the University violated the Contract.

As this Court wrote in *Hussey*, "Success in a breach of fair representation case requires that the plaintiff's underlying claim against the employer be meritorious." 2 F.Supp.2d at 223. This is in accordance with Supreme Court jurisprudence:

> Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation.

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990). When reviewing the award of an arbitrator who was empowered by the parties to decide their dispute, the Court must "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). This standard is the same in instances such as this, when the parties submitted the issue of the dispute's substantive arbitrability to arbitration. *Id.*

The Court is familiar with the Roger Williams Faculty Association's Contract with the University based on its previous work in the related case of *Roger Williams University Faculty Ass'n v. Roger Williams University*, 14 F.Supp.3d 27 (D.R.I.2014). The arbitrator who ruled in the case currently in dispute is exactly right:

> Based on the arbitrator's experience, it would be remarkable if the University agreed to submit to arbitral resolution the question whether it was required to create a new department. A University organizes itself to provide education through a department structure. Considerations of educational policy and the

efficient deployment of always scarce resources are critical in defining a department structure. Arbitrators know how to interpret contracts, but they can hardly be deemed competent or knowledgeable higher education administrators. The resolution of this grievance would place the arbitrator in the position of making judgments outside his presumed field of expertise. The parties could have agreed to put the arbitrators in that position, but clear contract language would be required to conclude that they did so. Here, such contract language is lacking, while the existing contract language shows that they did not agree to do so.

The Court concurs that it is clear that Plaintiff's claim that she is entitled to the title and compensation of a department chair is beyond the scope of the faculty's collective bargaining agreement, and intrudes into the arena of management rights retained by the University. Consequently, Plaintiff is unable, as a matter of law, to demonstrate that the University violated the Contract, one of the two necessary elements in establishing a breach of the duty of fair representation claim. Nor can Plaintiff demonstrate that the Union's conduct, either before or after the reinstatement of the arbitration, was "arbitrary, discriminatory or in bad faith," nor did it show "reckless disregard" for Plaintiff's rights or undermine "the integrity of arbitral process." For all of these reasons, Plaintiff's Counts I and III, claiming that the Union Defendants breached their duty of fair representation, are dismissed as a matter of law based upon the pleadings.

### Intentional infliction of emotional distress

In Counts II, IV and V, Plaintiff alleges that both Union Defendants and Defendant Melvin Topf, chairman of the Union's grievance committee intentionally or recklessly caused her emotional distress by withdrawing the arbitration, thereby causing "serious harm to the respect and reputation of the Plaintiff among her colleagues at RWU and significant distress, worry and embarrassment to Plaintiff." Complaint ¶ 49. These counts fail as a matter of law for several reasons.

### Federal preemption

First, Plaintiff's claims of intentional infliction of emotional distress are preempted by federal labor law, section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. That these claims are preempted is underscored by the fact that the allegations supporting Plaintiff's claims of breach of duty of fair representation are precisely the same factual allegations supporting her tort claims. The conduct of which Plaintiff complains in both her federal and state tort claims is the *same conduct*—the temporary withdrawal of her arbitration. *See Chaulk Services, Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361, 1366 (1st Cir.1995)("[T]he controversy which could be presented to the state court must be different from that which could have been presented to the NLRB."). Through her tort claims, Plaintiff appears to be trying to delve into Defendants' motivations for withdrawing her arbitration. Nonetheless, the act of withdrawing the arbitration goes to the essence of the labor-management relationship, and the responsibilities the Union has towards its members. Accordingly, the analysis of Plaintiff's tort claims would require an interpretation of the parties' Contract—to examine the procedures for pursuing grievances, as well as to assess the merits of Plaintiff's underlying claim about her workload. In the labor law context, the Supreme Court has established that a state law claim is preempted if the trial court would be called upon to

interpret the collective bargaining agreement in order to arrive at its resolution. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Therefore, the Court concludes that Plaintiff's state law tort claims are preempted by federal law.

### Elements of the tort

Even if Plaintiff's tort claims were not preempted, they founder before Defendants' attack because they fail to set forth the required elements of the tort of intentional infliction of emotional distress. The Rhode Island Supreme Court has held that the claim must include the following elements:

> (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. In addition, the Court has required at least some proof of medically established physical symptomatology for both intentional and negligent infliction of emotional distress.

Swerdlick v. Koch, 721 A.2d 849, 862–863 (R.I.1998).

In the present case, the Court has already established that the Union's temporary wavering as to whether or not to press Plaintiff's ultimately non-meritorious arbitration is not conduct that rises to the level of arbitrary, discriminatory or bad faith, nor is it extreme and outrageous. Plaintiff claims that she "did suffer significant distress and embarrassment in relation to the withdrawal of the arbitration due to the loss of respect and reputation of Plaintiff among her colleagues at RWU." As a matter of law, unsubstantiated claims of "embarrassment" and "signifi-

cant distress," with no further factual support, are insufficient to support Plaintiff's claims under the pleading standard set forth by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."). Moreover, Plaintiff makes no allegations that she has suffered any physical symptoms, as required by Rhode Island law.

For these reasons, Plaintiff's claims of intentional infliction of emotional distress, Counts II, IV and V, fail as a matter of law and are hereby dismissed.

### Conclusion

For these reasons, the Court grants Defendants' Motion for Judgment on the Pleadings, dismissing all counts in Plaintiff's Complaint. The Clerk shall enter judgment accordingly.

So ordered.