PACIFIC BELL, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Telecommunications International Union, California Local 103 IFPTE, AFL–CIO, Intervenor.

No. 00–1039.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 5, 2000.

Decided Aug. 10, 2001.

William Gaus argued the cause for petitioner. With him on the briefs was Craig E. Stewart.

David A. Seid, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Leonard R. Page, General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel. David S. Habenstreit, Attorney, entered an appearance.

Intervenor Telecommunications International Union, California Local 103, filed a notice of adoption of respondent's brief. M. Jane Lawhon and James E. Eggleston entered appearances for intervenor.

Before: GINSBURG, Chief Judge, and WILLIAMS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Pacific Bell petitions for review of an order of the National Labor Relations Board (NLRB), which found that the company committed an unfair labor practice by refusing to bargain with the Telecommunications International Union, California Local 103 IFPTE, AFL–CIO (TIU). Pacific Bell contends that its refusal to bargain was justified by a good faith reasonable doubt regarding TIU's authority to represent the bargaining unit's members in negotiating a new collective bargaining agreement. Because we find substantial evidence to support the NLRB's conclusion that Pacific Bell's doubt was not reasonable, the petition for review is denied, and the Board's cross-application for enforcement is granted.

I

Pacific Bell provides telephone services in the State of California. TIU has been the bargaining representative for a unit of Pacific Bell service representatives located

in northern California for approximately twenty years. During the time period at issue here, TIU and Pacific Bell were operating under a collective bargaining agreement that ran through August 8, 1998. Another union, the Communications Workers of America (CWA), represents other units of Pacific Bell employees, including another bargaining unit of service representatives.

On May 30, 1997, TIU and CWA drafted a Memorandum of Understanding prescribing a two-step process by which the TIU unit could merge with CWA. Memorandum of Understanding ¶ 2 [hereinafter MOU]. Step one involved a vote by the TIU unit to ratify the Memorandum itself. This occurred in June of 1997. The second step was to have been a final vote by the unit ratifying or rejecting the merger. The Memorandum scheduled this second vote for "July 31, 1998 or as soon as practicable after a CWA determination that acceding to a Pacific Bell request for early bargaining is in the best interests of Union members." MOU ¶ 2.[1]

The Memorandum provided that upon the first ratification vote, CWA would issue TIU a temporary charter to operate as a CWA affiliate in accordance with the terms of the Memorandum. *Id.* ¶ 3. The temporary charter would last either until TIU's current collective bargaining agreement expired on August 8, 1998,[2] or until the second ratification vote, whichever occurred first. *Id.* ¶¶ 3, 5. The Memorandum also outlined certain "transitional provisions" to govern TIU and CWA during the term of the temporary charter. Those provisions allowed TIU to participate in CWA leadership activities, required TIU to pay dues to CWA, and, most significant here, affirmed TIU's continued authority to represent its members: "During the term of the CWA temporary charter, .... TIU shall be solely responsible for representing TIU bargaining unit employees in collective bargaining matters." *Id.* ¶ 4. The Memorandum declared that if the TIU membership approved the merger in the second ratification vote, the temporary charter would be recalled, TIU would cease to exist, and CWA would become the exclusive bargaining representative for the unit. *Id.* ¶ 5. Finally, the Memorandum provided: "In the event the TIU membership rejects completion of the TIU/CWA merger in the second ratification vote, .... TIU shall then remain in and continue its status as the exclusive bargaining representative for the TIU bargaining unit." *Id.* ¶ 6.

In March of 1998, CWA began bargaining with Pacific Bell for a successor to the CWA unit's collective bargaining agreement, which was also set to expire in August. Although TIU's president had initially planned to attend these negotiations, she told Pacific Bell that difficulties had arisen between TIU and CWA, and that CWA had removed her from CWA's bargaining committee. CWA ratified a successor agreement for its bargaining unit in May of 1998, without the participation of TIU.

On May 14, 1998, TIU requested that Pacific Bell begin negotiating a successor to the TIU unit's collective bargaining agreement. TIU further requested certain information in preparation for bar-

---

**1.** The record is devoid of any indication that Pacific Bell ever made a request for early bargaining.

**2.** The Memorandum stated: "[T]he temporary charter will extend through the August *31,* 1998 expiration date of the current TIU collective bargaining agreement...." *Id.* (emphasis added). But both parties to this appeal agree that the August 31 date was an error, and that the authors of the Memorandum intended to specify August 8, 1998—the actual expiration date of TIU's bargaining agreement.

gaining, including the unit members' payroll records. In a letter dated June 3, 1998, Pacific Bell refused TIU's requests, citing the Memorandum of Understanding between TIU and CWA and noting that a final vote on whether to approve the merger with CWA had not yet occurred:

> The [Memorandum] ... clearly contemplates that the issue of representation would be resolved by a second vote of the TIU membership prior to final agreement on a 1998 contract. On the basis of what we now know, we believe there is clearly a question concerning representation that must be resolved. It would be inappropriate to begin bargaining with TIU while this question concerning representation is pending. We believe this matter must be resolved without delay and if there is no immediate prospect of its being resolved by the two unions, we believe it should be resolved by the National Labor Relations Board.

Letter from Pacific Bell to TIU, June 3, 1998.

On June 5, 1998, TIU again asked Pacific Bell to begin negotiating the 1998 successor agreement. That same day, Pacific Bell petitioned the NLRB for a Board-conducted election to determine the TIU unit's proper bargaining representative. A letter from Pacific Bell to the TIU unit's members explained that Pacific Bell would not bargain with TIU until the employer's petition was resolved. When the NLRB denied Pacific Bell's petition on August 7, 1998, Pacific Bell began to negotiate with TIU, and the two signed a collective bargaining agreement on September 8, 1998.

TIU filed an unfair labor practice charge against Pacific Bell on June 9, 1998, alleging that the employer had wrongfully refused to bargain and to provide TIU with bargaining-related information. The NLRB's General Counsel issued a complaint. Pacific Bell defended on the ground that, based on the Memorandum of Understanding, it had a good faith reasonable doubt regarding which labor organization represented the unit's employees. On June 11, 1999, an Administrative Law Judge (ALJ) found that Pacific Bell had failed in its burden of establishing reasonable doubt, and concluded that the employer had committed unfair labor practices in violation of sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) & (5). *Pacific Bell,* No. 32–CA–16810, slip op. at 9 (N.L.R.B. June 11, 1999).[3] On November 30, 1999, the Board affirmed the decision of the ALJ. *Pacific Bell,* 330 N.L.R.B. No. 31, 1999 WL 1100443 (Nov. 30, 1999).

## II

There is no dispute between the parties regarding the law applicable to this case. Section 8(a)(5) of the NLRA makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees," 29 U.S.C. § 158(a)(5), a duty which includes providing such representatives with relevant bargaining-related information. *See Detroit Edison Co. v. NLRB,* 440 U.S. 301, 303, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979); *Country Ford Trucks, Inc. v. NLRB,* 229 F.3d 1184, 1191 (D.C.Cir.2000).[4] As the

---

**3.** *See* 29 U.S.C. § 158(a) ("It shall be an unfair labor practice for an employer—(1) to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 157 of this title; ... [or] (5) to refuse to bargain collectively with the representatives of his employees...."); *see also* 29 U.S.C. § 157 (providing, inter alia, that "[e]mployees

shall have the right ... to bargain collectively through representatives of their own choosing").

**4.** Pacific Bell does not dispute that, if it committed an unfair labor practice by refusing to bargain with TIU, it also committed an unfair

Supreme Court explained in *Allentown Mack*, an employer that believes an incumbent union no longer enjoys the support of the majority of its employees may refuse to bargain with the union only if "the employer can show that it had a 'good faith reasonable doubt' about the union's majority support." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 361, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998); *see NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 778, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990). To satisfy that requirement, the employer's doubt must "be based on 'objective' considerations ... supported by evidence external to the employer's own (subjective) impressions." *Allentown Mack*, 522 U.S. at 368 n. 2, 118 S.Ct. 818 (emphasis omitted); *see Curtin Matheson*, 494 U.S. at 778, 110 S.Ct. 1542.

■ *Allentown Mack* also sets forth the standard of review appellate courts must apply when, as was the case here, the NLRB concludes that an employer has not demonstrated that it held a good faith reasonable doubt about the continuing authority of a union.[5] In such cases, the court "must decide whether that conclusion is supported by substantial evidence on the record as a whole." *Allentown Mack*, 522 U.S. at 366, 118 S.Ct. 818. Put differently, the Court said, the question presented for review is "whether, on the evidence presented to the Board, a reasonable jury could have found that [the employer] lacked a genuine, reasonable uncertainty about whether [the union] enjoyed the continuing support of a majority of unit employees." *Id.* at 367, 118 S.Ct. 818.

III

■ Pacific Bell does not assert that its good faith reasonable doubt about TIU arose from statements by employees that they no longer supported the union. *Cf. Allentown Mack*, 522 U.S. at 367–71, 118 S.Ct. 818. Instead, Pacific Bell's asserted basis for doubting TIU's authority was the Memorandum of Understanding entered into by TIU and CWA, and the conduct of the two unions under that Memorandum. According to Pacific Bell, those factors left it "in the position of not knowing which union [was] the appropriate representative for bargaining." Pacific Bell Reply Br. at 10 (quoting Representation Petition filed by Pacific Bell with the NLRB). However, we see nothing in either the Memorandum or the unions' conduct that would have caused an employer to have a good faith reasonable doubt about TIU's authority, let alone anything that would cause us to doubt whether the NLRB's conclusion—that Pacific Bell's alleged uncertainty was not reasonably based—was supported by substantial evidence.

Pacific Bell contends that, although TIU clearly retained authority to represent the unit with respect to the existing labor contract, the Memorandum left uncertain TIU's authority to negotiate a new contract. Once the first ratification vote (on the Memorandum) was taken, Pacific Bell asserts, the employer "was understandably uncertain as to which union should be its bargaining partner for a [contract] that would begin and remain in effect after the proposed merger." Pacific Bell Br. at 10. This was so, Pacific Bell argues, because it

labor practice by refusing to provide TIU with the requested information.

5. Pacific Bell asserts that the ALJ did not apply the "good faith reasonable doubt" standard, but rather required the employer to show that the union no longer actually represented a majority of the unit's employees. We disagree. The ALJ's decision is clearly based upon his conclusion that neither the Memorandum, nor the unions' conduct, created any objective grounds for doubting that TIU remained the authorized bargaining representative for the unit. *See Pacific Bell*, 330 N.L.R.B. at 31.

read the Memorandum as requiring that the second vote take place before the new contract was bargained. Pacific Bell Br. at 10; *see* Pacific Bell Reply Br. at 2, 7.

But there was nothing "understandabl[e]" about Pacific Bell's uncertainty, because there was nothing in the Memorandum to support the distinction Pacific Bell draws between TIU's authority with respect to the existing contract and its authority with respect to the new one. To the contrary, paragraph 4(C) of the Memorandum declared, without qualification, that during the term of the CWA temporary charter, "TIU shall be *solely responsible* for representing TIU bargaining unit employees in collective bargaining matters." MOU ¶ 4(C) (emphasis added). And, concomitantly, it declared that "CWA is not authorized to serve as collective bargaining representative for TIU bargaining unit employees during the term of the temporary charter and will not enter *any agreement* or take *any action* under color of such authority without the express written agreement of TIU." *Id.* (emphasis added).

Nor was there any reason to doubt, at the time Pacific Bell refused to bargain with TIU, that the temporary charter— with its designation of TIU as exclusive bargaining representative—was in effect. Paragraphs 3 and 5 of the Memorandum provided that the term of the temporary charter would extend through the August 8, 1998 expiration date of the current TIU collective bargaining agreement, or through the date of the second ratification vote, whichever occurred first. *Id.* ¶¶ 3, 5. Pacific Bell refused to bargain on June 3, 1998, at which time the current contract was still in effect and the second ratification vote had not yet occurred.

Pacific Bell further contends that, although the Memorandum made clear that TIU would remain as the exclusive representative if the second ratification vote resulted in rejection of the merger, *id.* ¶ 6, the Memorandum did not set forth TIU's status in the event the second vote never occurred at all. The employer also contends that by May of 1998, it had learned of "friction" developing between the unions, and that "a date for the second vote still had not been scheduled." Pacific Bell Br. at 18. All of this, the employer argues, provided "substantial objective evidence" that called "into question which union would be the appropriate bargaining partner." *Id.*

Again, we are hard pressed to see how any of these facts could have led to reasonable uncertainty about TIU's status on June 3, 1998, the date that Pacific Bell refused to bargain. The Memorandum itself contemplated that the second ratification vote would occur "on or about July 31, 1998," MOU ¶ 2, a date still almost two months in the future. Even if there were uncertainty as to TIU's status if a second vote never occurred,[6] June 8 was far too early for that uncertainty to have cast any doubt upon TIU's current authority.

Nor did "friction" between the two unions provide any objective basis for Pacific Bell to doubt TIU's authority. Pacific Bell contends that it was "faced with a dispute between the unions," and that it was "understandably uncertain as to how it should proceed." Pacific Bell Reply Br. at 1. But there never was any such "dispute"

---

**6.** We find this proposition itself to be dubious. The Memorandum provided that the temporary charter would expire upon the earlier of the second ratification vote or the expiration of the current collective bargaining agreement on August 8, 1998. Hence, if August 8

passed without a second vote, the temporary charter would run out, and the parties would be left with the situation that existed prior to the charter: i.e., with TIU as the unit representative.

about which union had authority to bargain for the unit. TIU told Pacific Bell in no uncertain terms that it alone had bargaining authority, *see* Letter from TIU to CWA, June 5, 1998, and CWA never told the employer anything to the contrary: CWA neither claimed that it had authority to bargain for the unit, nor questioned TIU's exclusive authority to do so. ALJ Hr'g Tr. at 119, 146, 153. Indeed, in purporting to rely on an interunion dispute, and in suggesting that TIU was violating its agreement with CWA—an agreement to which Pacific Bell was not a party—by failing to schedule the second ratification vote, the employer was acting at its peril. *Cf. Davenport v. Int'l Bhd. of Teamsters,* 166 F.3d 356, 364 (D.C.Cir.1999) ("Management should neither be allowed nor required to scrutinize internal union policies and practices too closely, and, indeed, it may commit an unfair labor practice if it delves too deeply into the union's affairs.") (quoting *Moreau v. James River–Otis, Inc.,* 767 F.2d 6, 10 (1st Cir.1985)).

█ Finally, Pacific Bell insists that it did not act wrongfully because, by petitioning the NLRB to resolve the issue, it "placed the outcome, and the timetable for the outcome, completely out of its hands and into the hands of the NLRB." Pacific Bell Br. at 21. But although Pacific Bell may have had the right to file a representation petition, the law is clear that without a good faith reasonable doubt about the union's majority support, the employer did not have the right to refuse to bargain while waiting for the NLRB to respond. *See Allentown Mack,* 522 U.S. at 361, 118 S.Ct. 818; *CPS Chemical Co. v. NLRB,* 160 F.3d 150, 155 (3d Cir.1998). By refusing to bargain in the interim, Pacific Bell deprived its employees of the right "to bargain collectively through representatives of their own choosing" during that period, 29 U.S.C. § 157, and in so doing committed an unfair labor practice, *see* 29 U.S.C. § 158(a)(1), (5).

IV

On "the evidence presented to the Board, a reasonable jury could have found that [Pacific Bell] lacked a genuine, reasonable uncertainty about whether [TIU] enjoyed the continuing support of a majority of unit employees." *Allentown Mack,* 522 U.S. at 367, 118 S.Ct. 818. Indeed, there is nothing in the record that would have given rise to such a reasonable uncertainty. Accordingly, Pacific Bell's petition for review is denied, and the NLRB's cross-application for enforcement is granted.